**CHAMPLIN PETROLEUM
COMPANY, Appellee,**

v.

**Donald C. INGRAM and John C.
Ingram, Appellants,**

**Trust created by the Last Will and
Testament of Jay P. Walker,
Deceased, et al., Appellees.**

No. 76–1427.

United States Court of Appeals,
Tenth Circuit.

Argued May 18, 1977.

Decided Aug. 12, 1977.

John M. Imel, Tulsa, Okl. (E. B. Grimes, Robstown, Tex., and Moyers, Martin, Conway, Santee & Imel, Tulsa, Okl., of counsel, with him on the brief), for appellants.

Frederic Dorwart, Tulsa, Okl. (J. Michael Medina, and Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl., and David L. Motloch, Champlin Petroluem Co., Fort Worth, Tex., of counsel, with him on the brief), for appellee, Champlin Petroleum Co.

Horace D. Ballaine, Tulsa, Okl. (Conner, Winters, Ballaine, Barry & McGowen, Tulsa, Okl., of counsel, with him on the brief), for appellees, Trust B Created by the Last Will and Testament of Jay P. Walker, Deceased, et al.

Before SETH and HOLLOWAY, Circuit Judges, and CHILSON,* Senior District Judge.

SETH, Circuit Judge.

This statutory interpleader action was brought by Champlin Petroleum Company to resolve a dispute between the royalty owners and the working interest owners as to the amount of royalties to be paid on the sale of residue gas from an oil and gas lease. The dispute centers on the language of the royalty provisions of the supplemental lease, and the question is whether the royalty on the residue gas is one-eighth or one-tenth.

The case was tried to the court which found the lease to be ambiguous as to the royalty on the residue gas, but that the parties by their course of conduct had interpreted this provision. Based on division orders between Champlin and the Ingrams, as royalty owners, Champlin had been paying a one-tenth royalty on the residue gas until this dispute arose, and the division orders were cancelled.

* Of the District of Colorado, Sitting by Designation.

The retained funds were thus awarded to the working interest owners. The Ingrams, as royalty owners, have taken this appeal, asserting that the court lacked jurisdiction, and erroneously interpreted the royalty provision.

In 1936, Donald M. Ingram, father of the appellants, as trustee, gave to W. F. Knode, the basic oil and gas lease which provided for a one-eighth royalty. In 1941, Process Oil Company, successor to Knode's interest, and Donald M. Ingram, as trustee, entered into a supplemental lease and agreement under which land was added to the original tract. The supplemental lease also provided for different gas royalty depending on whether or not the gas was processed by a recycling plant. This recycling process would only occur if it was profitable. These royalties were set at one-tenth for gas and its products which were processed, and one-eighth for gas sold at the well. The original lease was thus amended to conform to this provision.

In 1943, Process assigned its lease in the oil rights, and entered into a purchase contract and processing agreement for the gas with the Chicago Corporation (now merged into Champlin Petroleum Company). Under this gas agreement, Champlin's predecessor would extract products from the gas and return the residue gas to a gas reservoir underlying or common to the leased premises. Process Oil Company was liquidated, and its interests are now represented by the heirs of Trust B created by Walker.

The processing agreement referred to above was ratified by Donald M. Ingram, as trustee, and in 1943, he signed a gas and condensate division order prepared by Champlin's predecessor. This order provided for one-tenth of eight-eights for the gas royalty. In 1965, the trust was terminated, and its royalty interests were distributed to the appellants, Donald C. Ingram and John C. Ingram. The individuals signed new division orders with Champlin which provided for a one-tenth royalty on the sale of residue gas and the products extracted from the gas. Payment was made in accordance with these division orders until 1974, when the appellants asserted they were entitled to a one-eighth royalty on the residue gas.

On July 15, 1974, the appellants filed suit against Champlin in a Texas state court seeking $775,584.00 for an accounting for royalty payment on residue gas based on too low a price, and for payment based on too low a price of the plant product. The suit also sought ownership of the gas in place under the lands covered by the lease agreement. Subsequently Champlin, as a stakeholder, brought this statutory interpleader action in the United States District Court for the Northern District of Oklahoma, seeking an interpretation of the royalty provision to decide the ownership of the two and one-half percent differential in the royalty payment. Champlin deposited $1,664.21 as the res which was the two and one-half percent difference computed on the value of residue gas produced during May and June 1974, and continued to make monthly deposits until trial.

An ex parte order was entered restraining all parties-defendant from the institution or prosecution of any proceedings. The appellants filed a motion to dismiss the complaint or dissolve the restraining order. The motions alleged that Champlin was not a mere stakeholder and that the Texas state court action had priority. The motions were denied, and this action proceeded with judgment for the Walker interests.

■■■ Although not raised below, the appellants raise on appeal the contention that the trial court lacked subject matter jurisdiction since Champlin failed to deposit the entire sum of money in controversy with the court. See *Miller & Miller Auctioneers, Inc. v. G. W. Murphy Industries, Inc.*, 472 F.2d 893 (10th Cir.); *Gannon v. American Airlines*, 251 F.2d 476 (10th Cir.). Subject matter jurisdiction can of course be raised for the first time on appeal. *Bledsoe v. Wirtz*, 384 F.2d 767 (10th Cir.). Appellants urge that the sum deposited is insufficient because it is not the amount in controversy. The record however shows that Champlin deposited all that it had in its possession at the time it was notified of the dispute and the cancellation of the division orders. *See*

28 U.S.C. § 1335. Typically, Champlin did not seek to have decided the total amount of the obligation but sought to determine to whom the obligation was owing, the royalty owners or the working interest owners. The amount retained was small, but it was what accrued after the dispute was apparent.

The appellants' state court action sought damages for matters other than the two and one-half percent difference on the royalty on residue gas. These claims can still be pursued since a permanent injunction was not issued. The statutory interpleader action only involved the two and one-half percent difference. The appellants admitted that Champlin does not have title to the real property as the res, nor did it have the differential on the residue gas that had been paid since 1957 to the working interest owners. An interpleader action is one in equity and is governed by equitable principles. *Burchfield v. Bevans*, 242 F.2d 239 (10th Cir.); *Holcomb v. Aetna Life Insurance Co.*, 228 F.2d 75 (10th Cir.). Here it would be at least inequitable to require Champlin to deposit money which was paid to the working interest owners by the appellants' own actions. The dispute relates to the payments on future production.

Champlin thus deposited all of the disputed money that came into its possession after the controversy arose. Champlin thereby met the jurisdictional requirement. *Murphy v. Travelers Insurance Co.*, 534 F.2d 1155 (5th Cir.); Wright and Miller, Federal Practice and Procedure, § 1716. In *Miller & Miller Auctioneers*, the auctioneer did not deposit all of the money in controversy since after the garnishee notice he distributed the money to the secured creditors and Miller & Miller and tendered the remainder into the court. The appellants also seek to raise for the first time on appeal the adequacy of the state remedy. This was not raised at the trial court level and will not be considered here. *Neu v. Grant*, 548 F.2d 281 (10th Cir.).

The appellants' basic point is that the royalty provisions of the supplemental lease agreement were erroneously interpreted by the trial court. The pertinent language in section 8 of the lease is as follows:

"(b) As of June 1, 1941, Lessor reserves and Lessee agrees to pay to the Lessor a one-tenth (⅒) part of the gross proceeds of all gas, condensate, distillate, gasoline or other liquid hydrocarbon substances produced or extracted from gas produced from all the leased lands. 'Gross proceeds' shall mean all the proceeds from the sale of gas or the products thereof from the leased lands, less taxes as herein provided to be paid by Lessor and less any commission required to be paid in connection with the sale of products.

"(c) On gas, including gas, casinghead gas or other gaseous substances (condensate or distillate referred to in (b) above not included) produced from said land and sold off the said premises or in the manufacture of gasoline or other products thereof, Lessor reserves and Lessee agrees to pay one-eighth (⅛) part of the market value at the well of the gas so sold and (or) used off the premises, provided that on gas sold at the wells, the royalty shall be one-eighth (⅛) of the amount realized from such sale."

The trial judge concluded that the provisions were ambiguous as to the royalty payment on the residue gas, and looked to the conduct of the parties as evidenced by the division orders as to how the parties had interpreted the lease.

The appellants urge that section 8(b) above refers to liquid products from the processed gas, and since residue gas is a vapor, it should come under section 8(c) which is descriptive of gases. The grammatical construction of both sections is also asserted as supporting this conclusion. However, neither of these arguments demonstrates that the finding was clearly erroneous. The word "gas" for the payment of a royalty is found in both of these sections. Section 8(b) refers to gas, and the products of processed gas; and section 8(c) encompasses the sale of unprocessed gas at the well. After extracting the liquid products in the recycling process, the residue gas is

reinjected into the ground to absorb more liquid products for the extraction process. When it becomes uneconomical to do so, the residue gas is then sold. It was not erroneous to find the royalty provisions to be ambiguous as to the applicable section for residue gas.

■ Under Texas law, when a contract for the sale of gas is found ambiguous, one looks to the conduct of the parties as to their interpretation, the subject matter of the contract, and the surrounding circumstances existing when the contract was executed to ascertain the intent of the parties. *Lone Star Gas Co. v. X–Ray Gas Co.*, 139 Tex. 546, 164 S.W.2d 504. The parties' construction is entitled to great weight and will be upheld if the construction is a reasonable one. *Page v. Superior Stone Products, Inc.*, 412 S.W.2d 660 (Tex.Civ.App.). For thirty years the parties had concluded under the division orders that the royalty on the residue gas was to be one-tenth of the proceeds of the sale. This was a reasonable construction. The appellants had knowledge of this construction as evidenced by the division orders. *See Southland Royalty Co. v. Pan American Petroleum Corp.*, 378 S.W.2d 50 (Tex.). Ambiguity under a Texas oil and gas lease should be resolved in favor of the lessor when there are two or more equally reasonable constructions. *Zeppa v. Houston Oil Co. of Texas*, 113 S.W.2d 612 (Tex.Civ.App.). Here there are not two or more equally reasonable constructions. Even in *Zeppa* the court looked to the construction placed on the oil and gas lease by the parties themselves.

■ At the time the contract was executed the economics of the gas recycling process had not been established. It was reasonable to conclude that section 8(b) was for processed gas and 8(c) was for unprocessed gas in the event the processing plant did not prove economical. The royalty for the processed gas could be expected to be less. At the time of contracting, the principal value in the gas was from the products. To have the gas processed free of charge as provided in the agreement resulted in a greater royalty for the one-tenth of the proceeds than one-eighth of the unprocessed gas.

A consideration of the issues of laches and stated accounts is not necessary to the determination of this appeal.

AFFIRMED.