**UNITED STATES of America, Plaintiff,**

v.

**MAJOR OIL CORPORATION, Defendant-Appellant,**

**Andrew John Brennan, Special Master-Appellee.**

No. 77–1087.

United States Court of Appeals, Tenth Circuit.

Submitted June 26, 1978.

Decided Sept. 15, 1978.

Rehearing Denied Oct. 20, 1978.

Andrew John Brennan, Sp. Master, Salt Lake City, Utah, for appellee.

LeRoy S. Axland and Dennis T. Blair of Suitter, Axland & Armstrong, Salt Lake City, Utah, for defendant-appellant.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

The appeal in this interpleader action poses the question whether the District Court lacked subject matter jurisdiction over certain funds, identified as those representing an Internal Revenue Service (IRS) refund of federal income taxes resulting from a "loss-carryback," received by appellant, Major Oil Corporation (hereinafter referred to as Major). The court ordered Major to deliver the refund monies for deposit into the registry of the court in addition to certain funds previously deposited which had created the interpleader action. A recitation of the factual background should aid in placing the legal issue in proper focus.

Major owned and operated a large refinery at Roosevelt, Utah. Forty-seven percent (47%) of the capital stock of Major was owned by Arizona Fuels Corporation, a Utah corporation, whose sole stockholder is a Mr. Eugene Dalton, who was president of both Major and Arizona Fuels.

Major encountered financial problems. On August 6, 1974, a "Plan for Arrangement" was approved by a decree of the Bankruptcy Division of the United States District Court for the District of Utah. Major was released and discharged from all of its debts except as provided in the plan. Major was to continue to operate the refinery at Roosevelt, Utah. During the process of upgrading and improving the refinery, it was seized, following levy, by agents of the

IRS on August 1, 1975, for delinquent income taxes, excise taxes and employment taxes totaling $376,000.00. The sale of the refinery and all of the personalty, including equipment, vehicles and materials, was held on September 24, 1975. Major completed an audit prior to the sale which it provided to the purchaser, Plateau Refining Company. The total tax liability, costs of sale, and priority claims amounted to $879,640.65. The gross proceeds of sale amounted to $2,830,000.00. Thus, the net or surplus proceeds amounted to $1,950,359.35.

Major had applied to IRS and had obtained an extension for the filing of its corporate income tax return for the fiscal year ending June 30, 1975, just ten days prior to the refinery sale, i. e., on September 15, 1975. The filing was extended by IRS to December 15, 1975. The return, accompanied with Major's claim for a refund based upon a 1974 loss carry-back, was filed with IRS on September 26, 1975, just two days following the IRS sale of the refinery. The IRS conducted its regular administrative process, as required by the IRS Code, relative to the refund request, including a separate audit. On January 10, 1976, an IRS refund check was submitted to Major in amount of $94,287.39.

During the time that the Major refund application was being processed by IRS, the IRS filed a complaint in the District Court on November 21, 1975, interpleading into the registry of the court the excess from the refinery sale in amount of $1,950,359.35. The defendants named included Major, Arizona Fuels Corporation, and some fifty-two other persons, firms or corporations who were then known claimants of Major. The suit, of course, sought a determination as to the rights of the various claimants to the surplus proceeds, over which the IRS made no claim.

Significant to our disposition here, the record reflects that following a hearing held on February 9, 1976, upon motions filed by Major for issuance of a restraining order pursuant to 28 U.S.C. § 2361 and for interpleader of all claims against Major pursuant to Rule 22, Fed.Rules Civ.Proc., 28

U.S.C.A. the Court entered an Order on February 12, 1976, restraining " . . . the initiation and prosecution of claims in the Courts of the State of Utah and in the United States District Court for the District of Utah seeking monetary damages against defendant Major Oil Corporation arising out of the operation of the Roosevelt, Utah, refinery . . . pending further order of the Court and it is further ORDERED that Major . . . by and through its counsel . . . be . . . authorized to file claims in interpleader on behalf of all claimants known to Major . . . who seek monetary damages *arising out of the operation of the Roosevelt, Utah, refinery of Major* . . . who have yet to file claims in interpleader in this Court to permit the special master, Andrew John Brennan, Esq., to consider such claims in the recommended reports and orders the special master will from time to time make to this Court." [R., Vol. II, pp. 10, 11.] (Emphasis supplied.)

Thus, to recapitulate: the IRS tax levy sale held on September 24, 1975, included all of the known physical assets of Major, i. e., its Roosevelt, Utah, refinery and all personalty, including equipment, vehicles and material; the sale resulted in a net surplus, after satisfaction of the delinquent federal taxes and costs of sale, in amount of $1,950,359.35; that ten days prior to the refinery sale, Major applied to IRS for and obtained an extension of time within which to file its corporate income tax return for the fiscal year ending June 30, 1975; that on September 26, 1975, just two days after the refinery sale, Major filed the aforesaid income tax return, accompanied by an application for refund in amount of $94,287.39; on November 21, 1975, IRS filed this interpleader suit in the federal District Court interpleading into the court's registry the surplus proceeds from the refinery sale of $1,950,359.35; that on January 10, 1976, IRS submitted its refund check in amount of $94,287.39 to Major; that on February 12, 1976, following due and proper hearings held upon motions filed by Major the District Court entered a restraining order in the interpleader proceeding prohibiting

claimants of Major from initiating or prosecuting claims in the Courts of the State of Utah and in the United States District Court for the District of Utah. There is no dispute that the surplus proceeds (and, for that matter, the surplus proceeds coupled with the monies represented by the refund) could not possibly satisfy the claims of the many creditors. [R., Vol. I, p. 11.]

The special master filed his Second Interim Report on June 17, 1976, wherein he related, *inter alia,* that: (a) he had recently learned that on January 10, 1976, the IRS refund check of $94,287.39, plus interest, had been paid to Major, (b) after Major obtained the restraining order on February 12, 1976, that it requested that some of its creditors settle their accounts for a lesser sum than that owing, (c) Eugene Dalton, who serves as president of both Major and Arizona Fuels Corporation (which owns 57% of the stock of Major) had filed a claim in the interpleader action on behalf of Arizona Fuels Corporation against the interpleaded funds in amount of $622,424.98, and (d) Major should be ordered by the Court to deposit the sum of $94,287.39, plus interest, representing the IRS refund, into the court's registry for the benefit of and for distribution to the claimants in the interpleader proceeding.

Following briefing, hearing and oral argument, the District Court entered its opinion on November 18, 1976, that the aforesaid refund was "sufficiently rooted" in the pre-seizure and sale [of the refinery and other assets by IRS] " . . . that it cannot be excluded from funds considered to be surplus proceeds of the sale. Major's losses were offset against taxes which were owed, but delinquent, resulting in the sale of property which produced the surplus proceeds. These events are so inter-related that the court cannot see any reason to hold that the refund-debt arose separately, after the sale." [R., Vol. II, p. 74.] The Court further found that "Pursuant to IRC § 6343(b) this refund should have been delivered to the 'person or persons legally entitled thereto.' The IRS, therefore, should have deposited the refund into the registry of the Court pending distribution to Major's creditors." [R., Vol. II, p. 74.] The court ordered the refund proceeds of $94,287.39 to be deposited by Major into the registry as part of the interpleader funds together with interest thereon at the rate of six per cent (6%) per annum from date of January 10, 1976, to date of the order. [R., Vol. II, p. 77.] It is this order, of course, from which this appeal is taken.

Major contends that the District Court erred in (a) assuming jurisdiction to order the IRS refund monies deposited into the registry of the court in addition to the surplus proceeds following sale of the refinery which created the interpleader action, and (b) concluding that the tax refund received by Major should be made part of the interpleader res.

## I.

Major contends that the District Court erred in assuming jurisdiction to order the refund monies deposited into the registry of the court in addition to the surplus proceeds derived from the IRS sale of the refinery property seized from Major. The predicate is simply that when the District Court granted the IRS Petition (Complaint) for Interpleader, the interpleader fund was then established. [Brief of Appellant, p. 6.] Pointing to the subsequent action of the District Court in ordering Major to deposit the refund monies of $94,287.39 into the registry of the court as an increase to the interpleader fund, Major insists that the court lacked jurisdiction inasmuch as the " . . . *in personam* jurisdiction of the lower court extended only to the fund deposited with the Court." [Brief of Appellant, pp. 6, 7.] Major points to *Northern Natural Gas Company v. Grounds,* 441 F.2d 704 (10th Cir. 1971), *cert. denied,* 404 U.S. 951, 92 S.Ct. 268, 30 L.Ed.2d 754 (1971), and *Knoll v. Socony Mobil Oil Company,* 369 F.2d 425 (10th Cir. 1966), *cert. denied,* 386 U.S. 977, 87 S.Ct. 1173, 18 L.Ed.2d 138 (1967), for the rule that interpleader jurisdiction is limited to the "fund in controversy." In our view the rule was not violated by the November 18, 1976 order of the District Court.

Major was engaged in one business enterprise only, that of conducting the refinery operation at Roosevelt, Utah. All of the claimants in this interpleader proceeding are creditors of Major who supplied services or materials to the construction, improvement or operation of the refinery. The total of the claims far exceeds the combination of the monies represented by the surplus proceeds of the IRS sale and the tax refund.

The District Court, by analogy, found jurisdiction predicated on the proposition that the tax refund must be considered a part of the surplus proceeds of the seizure and sale by IRS on this rationale:

First, Major asserts that the surplus must be determined as of the date of the sale. This would exclude consideration of the refund because it was not ascertained until sometime after the date of sale. While it is true that the determination of the proper distribution of the funds should be made as quickly as possible, it should not be made inaccurately or before all of the final audits have been completed. There is not a statutory mandate to compute the surplus within a specified time limit. The IRS deposited the initial amount designated as the surplus of the sale within the Court's jurisdiction to determine who are the persons entitled thereto. The same procedure should have been followed with respect to the refund paid to Major.

Second, Major asserts that the refund was a contingent debt which did not become due and owing until after the sale, and therefore, was not a part of the seizure and sale transaction. Major contends that the amount of the debt did not become certain until after the IRS made its final audit in January, 1976 and, therefore, it should not be considered surplus of the sale . . . . .

The Supreme Court, in *Segal v. Rochelle,* 382 U.S. 375, [86 S.Ct. 511, 15 L.Ed.2d 428] (1966), and *Kokoszka v. Belford,* 417 U.S. 642, [94 S.Ct. 2431, 41 L.Ed.2d 374] (1974), has held that tax refunds are debts due and owing under Par. 70a(5) of the Bankruptcy Act.

In *Kokoszka,* the Supreme Court found that an income tax refund received after a petition in bankruptcy was filed was property to which the trustee was entitled.

In *Segal v. Rochelle,* supra, the Supreme Court construed the meaning of the property belonging to the bankrupt as of the date of the bankruptcy petition was filed to include a loss-carryback refund claim received after bankruptcy. The Court stated:

'. . . We believe it is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start that it should be regarded as property under Par. 70a(5).' (at 380 [86 S.Ct. 511])

The Court also noted at 378 [86 S.Ct. 511] that "the very losses generating the refunds often help precipitate the bankruptcy and injury to creditors, . . ."

Although these cases resulted from petitions under the bankruptcy and not from sales of property under the Federal Tax Lien Act, the Supreme Court's analysis is helpful in determining whether the refund was a separate transaction or one arising directly out of the sale of Major's property. The Court concluded that the refund was sufficiently 'rooted' in the pre-seizure and sale past that it cannot be excluded from funds considered to be surplus proceeds of the sale. Major's losses were offset against taxes which were owed, but delinquent, resulting in the sale of the property which produced the surplus proceeds. These events are so inter-related that the Court cannot see any reason to hold that the refund debt arose separately, after the sale. [R., Vol. II, pp. 72, 73, 74.]

We are persuaded that there is substantial merit in the District Court's reasoning, particularly in relation to the Court's conclusion that the refund was "sufficiently rooted" in the pre-seizure and sale past. We do not subscribe, however, to the trial

court's finding that the IRS should have deposited the refund into the registry of the court pursuant to IRC § 6342(b). This section applies to surplus proceeds remaining following an IRS *sale of seized property.*

Thus, the jurisdictional challenge is, in sum, that the court did not have control over the refund monies because these funds were not *originally* part and parcel of the funds constituting the subject matter of the interpleader action when the IRS Complaint was filed.

■ Interpleader jurisdiction was, in its early stages, entirely equitable in nature. Inasmuch as it is now authorized and based on statutory law, it does not command the equitable flexibility of yesteryear. *General Atomic Company v. Duke Power Company,* 553 F.2d 53 (10th Cir. 1977). Even so, one of the most basic equitable "trailings" attendant upon the vintage interpleader proceeding is that injunctive relief is especially proper where there are numerous claimants and where such relief would prevent a multiplicity of lawsuits. Accordingly, in an "overview" perspective, federal interpleader under 28 U.S.C.A. § 1335 is an action in equity governed by equitable principles. *Champlin Petroleum Company v. Ingram,* 560 F.2d 994 (10th Cir. 1977). *Champlin, supra,* is most relevant to the issue presented here, particularly in relation to Major's motion for and subsequent grant of injunctive relief sought pursuant to 28 U.S.C.A. § 2361. That statute authorizes the District Court to enjoin pending federal and/or state court proceedings affecting the subject matter of the interpleader: the interpleaded fund. Query: What is the interpleaded *fund* in the case at bar?

Helpful analogy in answer to the above query is the rule laid down by the Supreme Court in *State Farm Fire & Casualty Company v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). The Court there held that permitting an insurer to bring a federal interpleader action prior to the reduction of any claim to judgment in a case involving a bus collision resulting in two passenger deaths and multiple passenger injuries would best promote the purposes of statutory interpleader, especially "consideration of judicial administration." 386 U.S. at 533, 87 S.Ct. 1199.

The *Tashire* court, in *dicta,* related, by illustration, the remedial features of interpleader considering the circumstances of one fund and multiple claimants:

There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. *In this situation, the fund itself is the target of the claimants. It marks the outer limits of the controversy.* (Emphasis supplied.) 386 U.S., at p. 534, 87 S.Ct., at p. 1205.

■ Thus, *Tashire's* approach cleared the way for interpleader actions even in those instances where *prospective* claims are involved. Such rationale is consonant with the rule that the remedy of interpleader is not limited to an original action by a plaintiff stakeholder (here IRS) but is equally available to a defendant exposed to a threat of multiple liability. Fed.Rules Civ.Proc., rule 22, 28 U.S.C.A.

■ 28 U.S.C.A. § 2361 authorizes a federal district court to enter an order restraining all claimants from instituting a proceeding in any state or federal court affecting the property, instrument or obligation involved in the interpleader action. *Holcomb v. Aetna Life Ins. Co.,* 228 F.2d 75 (10th Cir. 1955), *cert. denied,* 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853 (1956). The injunctive power is nationwide and is intended to halt any proceeding the court deems inconsistent with the interpleader proceeding. Of course, injunctive power can be brought into play only if the fund or bond has been deposited by the stakeholder. *Holcomb v. Aetna Life Ins. Co., supra* ; Wright & Miller, Federal Practice and Procedure: Civil, § 1717. The injunctive relief granted by the District Court in the case at bar was not granted upon the petition of the stakeholder (IRS). Rather, it was

granted upon the motion of Major, a claimant and a defendant, and for obvious reason: *All of the claimants, other than Major, were creditors of Major.* Thus the injunction had the effect, as most certainly contemplated by the district court, of protecting Major from a multiplicity of suits with their attendant trouble and burdensome expense. *Sanders v. Armour Fertilizer Works,* 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206 (1934).

The breadth and scope of the restraining order sought and granted Major by the District Court was all encompassing. It prohibited "all persons, firms, corporations and any and all other legal entities claiming damages" against Majors "arising out of the operation of the Roosevelt, Utah, refinery" from the "initiation and prosecution" of claims in the Courts of the State of Utah and in the United States District Court for the District of Utah "pending further order" of the court. [R., Vol. II, pp. 10, 11.]

It has been long recognized that the proper accommodation between the policy against enjoining state proceedings and the objectives of Fed.Rules Civ.Proc., rule 22, interpleader is to recognize the federal court's power to issue an order whenever it is found that pending or threatened state court and/or other federal district court proceedings will destroy the effectiveness of the interpleader suit or the enforceability of its judgment. *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, et al.,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); Wright & Miller, Federal Practice and Procedure: Civil § 1717. This power has been held to extend to the injunction of federal or state proceedings not yet commenced. *Pan American Fire & Casualty Company v. Revere,* 188 F.Supp. 474 (E.D.La.1960); Moore's Federal Practice, 2nd Ed., Vol. 3A, § 22.-04[3] (1977). The district court's *in personam* jurisdiction extends only to the fund deposited with the court. *Knoll v. Socony Mobil Oil Company, supra,* at p. 429. The statute, by its terms, affords the court the power to enjoin other judicial proceedings in order to reduce the possibility of inconsistent determinations or the inequitable

distribution of the fund. 7 Wright & Miller, Federal Practice & Procedure, *supra*; Moore's Federal Practice, *supra*; *Fidelity Mortgage Investors v. First National City Bank,* 387 F.Supp. 544 (S.D.N.Y.1974).

We observe that the instant interpleader proceeding is *yet pending* and that no final judgment or decree settling the rights of the parties has been entered. In determining the rights of the claimants, the court must do complete equity between them. 45 Am.Jur.2d, Interpleader, § 38.

█ The equitable doctrine of "clean hands" applies to interpleader proceedings. *Pan American Fire & Casualty Company v. Revere, supra.* Thus, one is not entitled, under the "clean hands" doctrine, to the remedy of interpleader (or the protections provided thereby) if the hazard which he seeks to avoid has been occasioned by his own act. We hold that this doctrine bars Major from asserting that the refund monies are not properly part and parcel of the interpleader fund. When Major applied to the court for a "protective" order restraining the claimants from initiating or pursuing actions for damages against it, Major was fully cognizant that such an order could—unless otherwise altered—prevent all of its creditor claimants who performed services or supplied materials during the time Major owned and operated the refinery from making claim to any part of the refund monies! In effect, then, Major seeks "the best of·two worlds." On the one hand, it solicited and obtained the protective order of the Court preventing the various interpleader claimants from initiating or pursuing any independent actions for damages against it arising out of its operation of the refinery. On the other hand, it now seeks to set aside the court's order directing the deposit of the refund monies into the court's registry as part of the interpleader fund on the ground that the refund was not in existence at the time that the interpleader action was filed and, thus, no part of the interpleader fund. If Major should prevail, it will "pocket" the refund of $94,287.39 while the various claimants

scramble for that which admittedly will be a small portion of their total claims against the originally deposited excess sale proceeds fund! This hardly meets the "clean hands" measure.

The case of *Great American Insurance Company v. Bank of Bellevue,* 366 F.2d 289 (8th Cir. 1966) seems applicable to the case at bar. There, a surety company had issued two successive and independent "used car dealer" bonds covering the dealer's business activities during two successive years. The surety company filed an interpleader action and admitted liability *only* on the later or second bond, the face amount of which it tendered into the registry of the court. It named as interpleaded defendants all of the used car company's claimants without regard to when their claims were incurred. No mention whatsoever was made by the surety of the first bond. The interpleader action was, as the court found, an attempt by the surety company to defeat ultimate recovery by claimants from funds other than those reported and deposited with the court. Significant to the instant case, the court said, *inter alia* :

> The primary step in an interpleader proceeding concerns the determination of the fundholder's right to compel claimants to litigate their numerous claims in one proceeding and to confine total recovery to an amount not exceeding the deposited fund. . . .
>
> \* \* \* \* \* \*
>
> Interpleader is an equitable action controlled by equitable principles, *Burchfield v. Bevans,* 242 F.2d 239 (10th Cir. 1957); . . . and the equitable doctrine that one seeking equitable relief must do equity and come into court with clean hands is applicable.
>
> \* \* \* \* \* \*
>
> Interpleader being a remedy solely for the protection of the stakeholder, it may not be used by the stakeholder as a weapon to defeat recovery from funds other than the one before the court.
>
> \* \* \* \* \* \*

As between plaintiff (the stakeholder) and the fund claimants, the only issue is the right to interplead, while, as between the claimants, the issue is, who is entitled to the fund and in what proportions.

> \* \* \* \* \* \*

The law will not allow an interpleader to avoid its liability on funds not pleaded and not before the court by the back door method here urged. . . . 366 F.2d at pp. 293, 294.

The language of 28 U.S.C.A. § 1335(a) refers to "money or property" in the "custody or possession" of the party seeking interpleader. At the time that IRS filed the interpleader action, both the surplus proceeds from the refinery sale and the refund monies were in its "custody and possession." However, the "refund" monies had not then been claimed as a refund by Major. We observe that although the IRS interpleader relied upon the general jurisdiction of the District Court conferred by 28 U.S.C.A. § 1345 (original jurisdiction in all civil actions commenced by the United States except as otherwise provided by Act of Congress), and while interpleader is permissible under 28 U.S.C.A. § 1335, *supra,* (which depends upon deposit of the entire sum in controversy and diversity of citizenship), this Court has held that it is permissible to interplead, in lieu, under Fed.Rules Civ. Proc., rule 22, 28 U.S.C.A. Significant here, Rule 22 does not require that the fund be deposited with the registry of the court. *Percival Construction Co. v. Miller & Miller Auctioneers,* 532 F.2d 166 (10th Cir. 1976). *See also, Murphy v. Travelers Insurance Company,* 534 F.2d 1155 (5th Cir. 1976).

The District Court did not err in assuming jurisdiction to order Major to deliver over and deposit the refund monies into the Court's registry to be treated as part and parcel of the interpleader res.

## II.

Major argues that the District Court erred in ruling that the tax refund monies received by Major from IRS be made part of the interpleader *res.*

We have discussed the reasons, with supporting rules and rationale, upholding the District Court's assumption of jurisdiction over the refund monies as part of the interpleader *res.* They apply with equal force to Major's contention raised here.

In addition to the reasons stated in support of the District Court's order directing that the refund be treated as part of the interpleader fund *res,* we observe that one of the primary benefits of the interpleader insofar as claimants are concerned is that claimants need not have compulsion or need to seek out the assets of the debtor upon which they may execute. In lieu, claimants contest for a share of the fund deposited with the registry of the court. Thus, interpleader is recognized as a "pie slicing" technique, employed both to protect the stakeholder against multiple vexation as well as to assure a fair distribution among the creditors. *State Farm Fire & Casualty Company v. Tashire, supra; American Fidelity Fire Insurance Company v. Construcciones Werl, Inc.,* 407 F.Supp. 164 (D.C.V.I. 1975); 3A Moore, Federal Practice, § 22.-02[1] at 3003–5.

All of the physical business assets of Major were sold to satisfy the IRS tax claims following proper levy. The sale resulted in surplus proceeds of $1,950,359.35, far less than the amount required to satisfy the legitimate claims of Major's creditors who had participated on August 6, 1974, in a "Plan for Arrangement" in a bankruptcy proceeding. The IRS sale of the refinery occurred on September 24, 1974. Ten days prior thereto, with full knowledge of the date of the IRS sale, Major applied to IRS for an extension of time within which to file its corporate income tax return for the fiscal year ending June 30, 1975. The extension was granted to December 15, 1975. Major, however, did not require that much time. By what appears to be less than coincidental, Major "managed" to file the return, accompanied with its application for refund based upon a 1974 "loss carryback," on September 26, 1975, just two days following the IRS sale of the refinery. Obviously, the "loss" for which refund was requested is represented in large measure by the unpaid accounts of the claimants-defendants in this interpleader action. They were, of course, claimants in the bankruptcy arrangement relating to Major's continued operation of the refinery business. It is with this background in mind and with further knowledge that it was only after Major had applied to the Court and had been granted the order restraining and enjoining all suits and proceedings involving claims for "monetary damages" against it arising out of the refinery operation, except the prosecution of the claims filed in the interpleader proceeding, that we must judge the "equity" in Major's contention that the District Court erred in directing it to deposit into the registry, as part of the interpleader fund, the refund of $94,287.39. We hold that equitable considerations demanded that the District Court order the refund monies paid into the Registry as part and parcel of the interpleader "fund."

In our view, the following language in *Pipeliners Local Union No. 798, Tulsa, Oklahoma v. Ellerd,* 503 F.2d 1193 (10th Cir. 1974) draws a proper analogy:

A federal district court may assert jurisdiction of a claim which is a continuation of, or incidental and ancillary to, a principal claim over which it has jurisdiction, even though it might not have jurisdiction of the ancillary proceedings if it were an independent and original action or proceeding. *Aetna Insurance Company v. Chicago, Rock Island and Pacific Railroad Company,* 229 F.2d 584 (10th Cir. 1956); Wright, Federal Practice and Procedure: § 1414 at 69–71. This is so because the ancillary claim is referable to or dependent upon the jurisdiction the court over the principal suit or proceeding. . . . 503 F.2d at 1198.

And in *Shump v. Balka,* 574 F.2d 1341 (10th Cir. 1978), we observed in part:

In view of the singular relationship generated by the lease agreement between the rental fees, maintenance fees, and setoffs for repairs occasioned by damages to the leased premises, the trial court did not err in assuming subject