Ida GELER, Israel Geler, and Yacof
Geler, Plaintiffs,

v.

NATIONAL WESTMINSTER BANK
USA, Defendant and Third–Party
Plaintiff,

v.

Howard GLUCKMAN, as administrator
of the last will and testament of Susana
a/k/a Shoshana Ghitelman, Third–Par-
ty Defendant.

NATIONAL WESTMINSTER BANK
USA, Plaintiff,

v.

Howard GLUCKMAN, as administrator
of the last will and testament of Susana
a/k/a Shoshana Ghitelman, Ida Geler,
Israel Geler, and Yacof Geler, Defen-
dants.

Nos. 90 Civ. 6840 (RLC), 91 Civ.
1354 (RLC).

United States District Court,
S.D. New York.

May 2, 1991 *.

* This amended opinion supersedes the opinion  dated April 15, 1991.

Anderson Costigan, New York City (William F. Costigan, of counsel), for Ida Geler, Israel Geler, and Yacof Geler.

Winston & Strawn, New York City (Michael E. Cavanaugh, of counsel), for Nat. Westminster Bank USA.

Yerushalmi, Shiboleth, Yisraeli & Roberts, New York City (Marilyn B. Fairberg, of counsel), for Howard Gluckman, admin'r.

## AMENDED OPINION

ROBERT L. CARTER, District Judge.

This case illustrates how ineptitude and dilatory tactics can complicate a relatively simple matter.

## BACKGROUND

These consolidated actions relate to a 90–day renewable certificate of deposit, in the amount of approximately $500,000, issued by National Westminster Bank (the "Bank"). It is disputed whether the account was held solely by Benjamin Ghitelman or jointly by Benjamin Ghitelman and his wife Susana Ghitelman (a/k/a Shoshana Ghitelman). The account was a so-called *Totten* trust, payable on the death of the depositor or depositors to the named beneficiaries, Ida Geler, Israel Geler and Yacof Geler (the "Gelers").

After Benjamin Ghitelman's death, Susana Ghitelman withdrew the funds deposited in the account. Subsequently, the Gelers

attempted to withdraw the money, only to find that Susana Ghitelman had already withdrawn it. Susana Ghitelman returned the money to the Bank upon its demand. She subsequently died. The Gelers then filed against the Bank, the first action herein, No. 90 Civ. 6840 (RLC) (the "Geler action"), seeking to recover the disputed funds.

Throughout the discovery period, Marilyn B. Fairberg attended conferences in the Geler action as counsel for Howard Gluckman ("Gluckman" or "Susana Ghitelman's administrator"), who was not a party to the action, and who had not yet received ancillary letters of administration C.T.A. for the Susana Ghitelman estate from the Surrogate's Court of the State of New York, County of New York. Fairberg represented to this court that her client would intervene in the action as soon as he received those letters.

Relying on these representations, Constantine A. Despotakis, then counsel to the Bank, sought to delay the resolution of the Geler action pending the intervention of Susana Ghitelman's administrator. Despite the court's repeated suggestions that the Bank should bring an interpleader claim against the Gelers and the Susana Ghitelman estate, Despotakis, without explanation or excuse, failed to pursue that remedy.[1] Indeed, his conduct in conferences seemed to indicate that he was more interested in protecting the interests of Susana Ghitelman's estate than those of his own client. Meanwhile, the Geler action proceeded to the point that discovery was completed and a motion for summary judgment[2] by the Gelers was fully submitted.

The Surrogate's Court eventually entered a decree appointing Gluckman as ancillary administrator C.T.A. of Susana Ghitelman's estate. *In re Ghitelman*, No. 232/1991 (N.Y.Sur.Ct., N.Y. County, Feb. 4, 1991). Despite her earlier representations, however, Fairberg did not have Gluckman intervene in the Geler action, but proceeded to file suit against the Bank in the Supreme Court of the State of New York, County of New York (the "state court action"), seeking the proceeds of the certificate of deposit, as well as damages for fraud and breach of fiduciary duty related to the transactions in issue. *Gluckman v. National Westminster Bank, USA* (N.Y.Sup.Ct., N.Y. County, filed Feb. 14, 1991). Fairberg's tactics waste judicial resources and threaten to expose the Bank to multiple liability on a single fund.[3]

Despotakis, on behalf of the Bank, subsequently filed a third-party complaint in the Geler action, and an additional action in this court, No. 91 Civ. 1354 (RLC), both seeking interpleader of the competing claims of the Gelers and Susana Ghitelman's administrator. At a conference held on April 2, 1991, the court ordered the two actions consolidated.

The Bank now seeks an injunction staying litigation of the state court action.[4] The Gelers, however, contend that this court lacks power to enjoin proceedings in the state court action. Furthermore, they object to the Bank's stalling and ask this court to decide their motion for summary judgment in the Geler action without further delay.

---

1. If there was a problem related to personal jurisdiction over the Ghitelman estate or Ghitelman's heirs, Despotakis failed to communicate this point in conferences with the court. In any event, if the necessary parties could not have been joined for that reason, the Bank could have moved for dismissal for failure to join an indispensable party. *See* Rule 19(b), F.R.Civ.P. It did not do so.

2. Although the motion is denominated a motion for "partial" summary judgment on the Gelers' first cause of action, granting the motion would

render the Gelers' other cause of action moot and thus dispose of all their claims.

3. Because the Bank is treated as a citizen of New York, *see infra* p. 8, the state court action is not removable despite diversity of citizenship. *See* 28 U.S.C. § 1441(b).

4. The Bank also requests that the court enter an order placing the funds deposited with the court in an interest-bearing account. Since money deposited in court is routinely placed in interest-bearing accounts, *see* Rule 67, F.R.Civ.P., such an order is unnecessary.

## DISCUSSION

*Summary Judgment*

■ The court agrees with the Gelers that it should proceed to the consideration of their summary judgment motion at this time. To be sure, in an interpleader action, a court should ordinarily wait until all claimants have been heard before deciding any individual claim. In this case, however, the Bank's irresponsible delays in bringing its interpleader claim would make it inequitable for the court to defer the resolution of the Gelers' summary judgment motion any longer. A determination of the Gelers' rights, if otherwise timely, cannot be forced to wait merely because the Bank was asleep as to its own rights.

■ The Gelers' motion for summary judgment must be denied, however, because there exists a triable issue of fact. Summary judgment will be granted only if there is no genuine factual dispute, such that the moving party would be entitled to a directed verdict at trial. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–252, 106 S.Ct. 2505, 2509–2512, 91 L.Ed.2d 202 (1986).

Esther Obadia, an Assistant Vice President and Account Officer in the Bank's International Private Banking Department, describes a meeting on June 29, 1987, at which she, Benjamin Ghitelman and Susana Ghitelman were present. *See* Esther Obadia Affidavit ¶ 4. At that meeting, Benjamin Ghitelman specifically directed that all his accounts, both checking and time deposits, should be joint with his wife. *Id.* Obadia indicated this fact by placing a notation "and TD's" on the Ghitelmans' joint checking account signature card, thereby signifying that the joint account status applied to the time deposits as well. *Id.*

On June 21, 1988, and July 21, 1988, Benjamin Ghitelman purchased two certificates of deposit, with instructions to consolidate them into a new certificate of deposit at a certain point. *Id.* The consolidated certificate of deposit is the subject of the present action. The caption on this certificate states that the certificate was held by Benjamin Ghitelman in trust for the Gelers.

According to the Bank, such a title would have required written instructions from Benjamin Ghitelman. *Id.;* Linda Fong Affidavit ¶ 6. However, the written instructions, if any, have been misplaced by the Bank. Esther Obadia Affidavit ¶ 4.

■ The Gelers contend that the certificate of deposit is an integrated writing, and that the parol evidence rule thus bars the court from considering the 1987 oral instructions and signature card as evidence of differing contract terms. If Benjamin Ghitelman had signed the certificate of deposit or otherwise unequivocally manifested his assent to its terms, the court would agree. The evidence here, however, only establishes that a customer copy of the certificate was mailed to Benjamin Ghitelman, and that the certificate was automatically renewed in accordance with its terms. *See* Stipulation in Lieu of 3(g) Statement ¶¶ 7–9; Esther Obadia Affidavit ¶ 4. Nothing in the parties' submissions conclusively establishes that Benjamin Ghitelman in any way ratified or accepted the terms of the certificate in their entirety. Accordingly, the court finds that the Gelers have not established that the certificate of deposit is, as a matter of law, an integrated writing reflecting a contract between the Bank and Benjamin Ghitelman so as to trigger the application of the parol evidence rule.

■ The question of the ownership of the certificate of deposit thus turns on the weight and credibility to be given to the evidence. The court cannot make this determination based solely on affidavits presented on a motion for summary judgment. A trial on the merits is therefore required to resolve the dispute. Because the Gelers have not shown "that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law," Rule 56(c), F.R.Civ.P., their motion for summary judgment is denied.

*Injunction*

Having denied the Gelers' summary judgment motion, the court must now address the Bank's application for a preliminary injunction. The Anti–Injunction Act,

28 U.S.C. § 2283, generally forbids the federal courts from enjoining state court proceedings. The act admits of only three exceptions: the court may enjoin a pending state court action (1) as expressly authorized by act of Congress, (2) where necessary in aid of its jurisdiction, or (3) where necessary to protect or effectuate its judgments.

The Bank attempts to characterize its claim as one under the federal interpleader statute, 28 U.S.C. § 1335. Title 28 U.S.C. § 2361 expressly authorizes the court to enjoin pending state proceedings in statutory interpleader actions. However, this case cannot proceed as a statutory interpleader action because of a lack of diversity of citizenship among the claimants.

■ For a stakeholder to maintain a statutory interpleader action, at least two of the claimants must be of diverse citizenship. *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31, 87 S.Ct. 1199, 1203–04, 18 L.Ed.2d 270 (1967); *see* 28 U.S.C. § 1335(a)(1). The citizenship of a disinterested stakeholder is irrelevant. *See* 28 U.S.C. § 1335(a)(1); *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 70–72, 60 S.Ct. 44, 47–48, 84 L.Ed. 85 (1939).

■ For the purposes of both the interpleader statute and the general diversity jurisdiction statute, Susana Ghitelman's administrator is treated as having the same citizenship as the decedent, an Israeli. *See* 28 U.S.C. § 1332(c)(2).[5] To be sure, 28 U.S.C. § 1332(c)(2), as amended by Congress in 1988, merely provides that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same *State* as the decedent" (emphasis added).[6] It would be absurdly inconsistent, however, to treat the representative of a citizen's estate according to the decedent's citizenship, but to treat the representative of an alien's estate according to the representative's own citizenship. The most obvi-

ous and sensible meaning of § 1332(c)(2), which was clearly intended by Congress, is that the representative of a decedent's estate is treated as having the citizenship of the decedent. Consequently, the representative of the estate of an alien is treated as an alien for purposes of diversity jurisdiction.

■ The Gelers are all citizens of Israel. Thus, all of the claimants in this case are aliens or are treated as aliens, and the requisite diversity is lacking.

■ The Bank is treated as a citizen of New York, the state in which it is located. *See* 28 U.S.C. § 1348. The Bank makes the far-fetched argument that it may be regarded as a claimant because Gluckman, as Susana Ghitelman's administrator, also asserts a claim for fraud and breach of fiduciary duty against it in the state court action. In support of this argument, the Bank cites cases that have held that if the stakeholder has an interest in the fund deposited in court, it is a claimant for purposes of statutory interpleader jurisdiction. *See Lummis v. White*, 629 F.2d 397, 402–03 (5th Cir.1980), *rev'd on other grounds sub nom. Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982); *Mt. Hawley Ins. Co. v. Federal Sav. & Loan Ins. Corp.*, 695 F.Supp. 469, 473 (C.D.Cal.1987); *Builders & Developers Corp. v. Manassas Iron & Steel Co.*, 208 F.Supp. 485, 492 n. 2 (D.Md.1962); *MFA Mut. Ins. Co. v. Lusby*, 295 F.Supp. 660, 664 (W.D.Va.1969); *Pan Am. Fire & Cas. Co. v. Revere*, 188 F.Supp. 474, 486 n. 8 (E.D.La.1960); *cf. Treinies, supra*, 308 U.S. at 70–72, 60 S.Ct. at 47–48.

In this case, however, the Bank has disclaimed all interest in the fund deposited in court. Though Susana Ghitelman's administrator claims a potentially larger amount in the state court action, only the amount deposited in court is in issue in the putative

---

5. The definition of citizenship is the same for the interpleader statute as for the general diversity statute. *See* 28 U.S.C. § 1335(a)(1).

6. The diversity statute defines "State" as "includ[ing] the Territories, the District of Columbia, and the Commonwealth of Puerto Rico," 28

statutory interpleader action.[7] Since the Bank has no interest in the money deposited in court, it is in no sense a claimant to it. *See* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1710 at 546–47 (2d ed. 1986).[8]

■ Although the court does not have jurisdiction under the interpleader statute, it has jurisdiction if the action is treated as an interpleader under Rule 22, F.R.Civ.P. Since the plaintiff (the Bank) is diverse in citizenship from all the defendants (Susana Ghitelman's administrator and the Gelers), and the amount in controversy exceeds $50,000, the court has subject-matter jurisdiction under the general diversity-jurisdiction statute. 28 U.S.C. § 1332; *see, e.g., John Hancock Mut. Life Ins. Co. v. Kraft,* 200 F.2d 952, 953 (2d Cir.1953); *Banco de Ponce v. Hinsdale Supermarket Corp.,* 663 F.Supp. 813, 815 (E.D.N.Y.1987).

■ The Gelers object that the Bank's interpleader-related pleadings refer only to the interpleader statute, and argue that the court therefore must not treat them as a rule interpleader. However, pleadings are not to be read narrowly and technically, but are to be construed so as to do "substantial justice." Rule 8(f), F.R. Civ.P. A claim will be dismissed only if its allegations would entitle the claimant to relief on no possible theory, even though the theory of the party asserting the claim was incorrect. *See, e.g., Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir.1974); *Hudson's Bay Fur Sales Canada, Inc. v. Scheflin–Reich, Inc.,* No. 90 Civ. 8026 (RLC), slip op. at 4–5 (S.D.N.Y. Apr. 8, 1991) (1991 WL 60377) (Carter, J.). Since the Bank alleges all the essential elements of a rule interpleader action, the court will

construe its pleadings as stating a claim under Rule 22, F.R.Civ.P.

■ Although 28 U.S.C. § 2361, which authorizes the court to enjoin pending state proceedings, applies only to statutory interpleader actions, the court has the power to enjoin a pending state proceeding in a rule interpleader action under the "aid of jurisdiction" exception to the Anti–Injunction Act. *Id.* § 2283; *see General Ry. Signal Co. v. Corcoran,* 921 F.2d 700, 706–06 (7th Cir.1991); *Viewhaven, Inc. v. Marcello Danon,* No. 85 Civ. 9603 (LLS), slip op. (S.D. N.Y. June 12, 1986) (1986 WL 6779, *1–2) (Stanton, J.); *Emmco Insurance Co. v. Frankford Trust Co.,* 352 F.Supp. 130, 132 (E.D.Pa.1972); *Pan American Fire & Casualty Co. v. Revere,* 188 F.Supp. 474, 485 (E.D.La.1960).

In *General Railway Signal Co. v. Corcoran, supra,* 921 F.2d at 702–03, the Court of Appeals for the Seventh Circuit vacated a district court order that had enjoined enforcement of a state court judgment pending the outcome of the federal interpleader action. The court of appeals held that, because there was no diversity between the claimants, the district court had misconstrued the federal action as a statutory interpleader case, and that, therefore, it had erroneously relied on 28 U.S.C. § 2361 to support its entry of an injunction. *Id.* However, the court of appeals held that the federal action could proceed as a rule interpleader case, and that the district court, on remand, could nonetheless issue the injunction, since "[a] federal court presiding over an interpleader action may stay pending state court proceedings involving the same interpled fund under the 'necessary in aid of its jurisdiction' exception to the Anti–Injunction Act."[9] *Id.* at 707.

U.S.C. § 1332(d), but evidently not foreign states.

**7.** As a prerequisite to maintaining a statutory interpleader action, the stakeholder must either post a bond or deposit the amount in controversy into court. 28 U.S.C. § 1335(a)(2).

**8.** The case of *United Benefit Life Insurance Co. v. Leech,* 326 F.Supp. 598 (E.D.Pa.1971), is roughly on point. In that case, the defendant-claimants were all citizens of Pennsylvania, while the plaintiff-stakeholder was a citizen of

Nebraska. Although one claimant asserted a claim of $18,886.12, the stakeholder had deposited only $4,124.20, which it asserted was the extent of its liability. *Id.* at 599. The court found that it lacked jurisdiction under the interpleader statute because the claimants were all citizens of the same state. *Id.*

**9.** There is language in another Court of Appeals case addressing the issue, *United States v. Major Oil Corp.,* 583 F.2d 1152, 1158 (10th Cir.1978), that supports this proposition. However, the court's precise holding and reasoning in that

**728**

Quoting from Judge Skelly Wright's opinion in *Pan American Fire & Casualty Co.,* *supra,* 188 F.Supp. at 483, the court explained:

> Usually interpleader will not be really effective unless all claimants are brought before the same court in one proceeding and restricted to that single forum in the assertion of their claims. To accomplish that end, ... it is of course essential that the interpleader court enjoin the institution or prosecution of other suits on the same subject matter elsewhere.

921 F.2d at 707.

Commentators agree that where, as here, a federal court can assert conventional *in personam* jurisdiction over the claimants, it has the authority to enjoin a state court proceeding in a rule interpleader case. As Wright, Miller and Kane explain:

> Section 2361 only authorizes injunctions against other judicial proceedings in statutory interpleader actions; it does not apply to rule interpleader. This limitation seems appropriate inasmuch as the interpleader statute reflects a congressional decision to permit federal courts to assert personal jurisdiction on a nationwide basis in certain types of actions, whereas Rule 22 is not intended to have the same scope of application. But the mere fact that a nationwide injunction under Section 2361 is not available in a rule interpleader case does not mean that the court does not have discretion in the latter context to issue an order against those claimants that have been subjected to the court's jurisdiction in accordance with the more traditional rules of process applicable in cases under Rule 22.... A preliminary injunction to stay a state court action while the federal court determines the Rule 22 interpleader case might be regarded as "necessary in aid of its jurisdiction" and a permanent injunction at the conclusion of the federal action may be needed "to protect or effectuate its judgments." Accordingly, the proper accommodation between the policy against enjoining state proceedings and the objectives of rule interpleader is to recognize the federal court's power to issue an order whenever a pending state court action represents a threat to the effectiveness of the interpleader suit or the enforceability of its judgment.

7 C. Wright, A. Miller & M. Kane, *supra,* § 1717 at 616–17; *accord* 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 22.13 (2d ed. 1990) ("Despite the restrictions imposed by 28 U.S.C. § 2283 on the federal court's power to enjoin state proceedings, it may still be proper in at least some cases brought under Rule 22(1) to enjoin the defendants, who have been served with process within the *state,* from instituting or proceeding with actions on their claims.").

As the United States Supreme Court stated in *Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970),

> [the "aid of jurisdiction" and "protect judgments"] exceptions to the general prohibition of § 2283 imply that some federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.

*Id.* at 295, 90 S.Ct. at 1747.

Allowing litigation to go forward on individual claims while a rule interpleader action is pending in federal court would defeat the entire purpose of the interpleader remedy, which is to avoid the possibility of multiple litigation leading to multiple liability. Concurrent suits on individual claims in state court during the pendency of a federal interpleader action thus uniquely impair the federal court's jurisdiction. Under such circumstances, the "aid of jurisdiction" exception to the Anti–Injunction Act is clearly applicable, and the Anti–Injunction Act poses no barrier to the court's

case is unclear, because the court appears to refer to rule interpleader and statutory interpleader interchangeably.

authority to issue an injunction against the state-court action.

█ Before an injunction in a rule interpleader case can be granted, however, the usual standards for granting a preliminary injunction must be satisfied. *General Ry. Signal Co., supra,* 921 F.2d at 707; *Holland America Ins. Co. v. Succession of Roy,* 777 F.2d 992, 997 (5th Cir.1985); *Viewhaven, supra,* slip op. (1986 WL 6779, *4). That is, the party seeking the injunction must demonstrate (1) irreparable harm if the injunction is not granted, (2) either likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair ground for litigation, and (3) a balance of hardships tipping clearly in favor of the party requesting relief. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). Moreover, the party against whom the injunction is sought must be afforded notice and a fair opportunity to be heard. Rule 65(a), F.R.Civ.P.

█ Under the circumstances of this case, comity and respect for the state court system dictate that the Bank should first move in the state court for a stay of the state court action before applying for an injunction in this court. If the state court grants the motion, an injunction from this court will be unnecessary. Thus, the Bank has not made the required showing of irreparable harm. *Cf. Holland America, supra,* 777 F.2d at 997.

### CONCLUSION

The Gelers' motion for partial summary judgment is denied. The motion of the Bank for an injunction staying the state court action is also denied, without prejudice to renewal of the motion if the Bank is unable to obtain a stay in state court.

IT IS SO ORDERED.