**Howard BASS and Mitchell Bass, Defendants-Appellants,**

v.

**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, Plaintiff-Appellee.**

**No. 82–1461.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1982.
Decided Jan. 26, 1983.

Michael A. Braun, Feiwell, Galper & Lasky, Chicago, Ill., for defendants-appellants.

John L. Rogers, III, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellee.

Before BAUER and CUDAHY, Circuit Judges, and WEICK,* Senior Circuit Judge.

CUDAHY, Circuit Judge.

In issue here is the validity of a "consent preliminary injunction" arranged between one claimant, the plaintiff, and the stakeholder-defendant, which froze a sum held by the stakeholder in escrow.[1] This "consent preliminary injunction" was arranged during the course of a preliminary injunction hearing in the district court when plaintiff Federal Savings & Loan Insurance Corporation ("FSLIC") persuaded the stakeholder-defendant, Intercounty Title Company of Illinois ("Intercounty"), to agree not to disburse the funds pending the trial on the merits. The other claimants, however, did not consent to the preliminary injunction. The district court nevertheless approved the arrangement and entered a consent preliminary injunction against Intercounty, thereby freezing the funds. We reverse.

## I.

This dispute arises in connection with the insolvency of a state chartered, federally insured savings and loan association. Unity Savings Association ("Unity"). Appellants Howard Bass and Mitchell Bass were officers, directors and stockholders of Unity. Appellee FSLIC was appointed Receiver for Unity on February 20, 1982.[2]

---

* The Honorable Paul C. Weick, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

1. This court has jurisdiction pursuant to 28 U.S.C. § 1292(a).

2. Appellants argue that the FSLIC is acting beyond its authority in litigating this action against them. In our view this action is a proper means of enforcing 12 C.F.R. § 563.39 (1982), which provides that "[a]n insured institution shall not enter into an employment contract with any of its officers or other employees if such contract would constitute an unsafe or unsound practice." As Judge Getzendanner observed in granting a temporary restraining order, "[i]f the public gets the idea that large sums of money can be moved out of these institutions and that the FSLIC is not in a position to stop it, that could be really taken into account by investors in making their investment decisions." Transcript of Proceedings at 39 (March 3, 1982). *Compare Gulf Federal Savings & Loan Ass'n v. Federal Home Loan Bank Board,* 651 F.2d 259, 265 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982). Alternatively, the FSLIC is empowered as Receiver of Unity

Shortly after its appointment as Receiver, the FSLIC learned that approximately $330,000 had been withdrawn from Unity several months earlier and given to Intercounty to hold in escrow. The money was to be used to make payments to several of Unity's officers pursuant to employment agreements between those officers and Unity. Among the events that would trigger the payments was the bankruptcy of Unity. The Basses claim that these agreements were legitimate means for Unity to avoid losing key officials and management personnel. The FSLIC contends that the agreements constituted self-dealing and a breach of fiduciary duty. These agreements, however, are not in question here.

The issue before us is the procedure by which the FSLIC froze the disputed funds pending final determination of the agreements' lawfulness. On March 3, 1982, the district court granted the FSLIC's motion for a temporary restraining order freezing the funds. The FSLIC then sought a preliminary injunction to continue the freeze and on March 11, 1982, the district court commenced a hearing on this motion. The court heard testimony on March 11 and again on March 12 for the purpose of establishing whether the FSLIC could satisfy the criteria for the issuance of a preliminary injunction against the Basses and Intercounty. On March 15, 1982, however, following a weekend recess, the FSLIC requested and was granted a one-day recess for the purpose of trying to negotiate a resolution. The next day, the FSLIC and Intercounty told the court that they had agreed to a consent preliminary injunction according to which Intercounty would be ordered by the court not to disburse any portion of the disputed funds pending final determination of the action. Consent Preliminary Injunction at 3–4. The court entered the consent preliminary injunction against Intercounty and granted the FSLIC's request to withdraw the preliminary injunction motion as against the Basses.

## II.

Before approving a proposed consent order, the district court must determine that the order is "fair, adequate, reasonable and appropriate under the particular facts *and that there has been valid consent by the concerned parties."* *Metropolitan Housing Development Corporation v. Village of Arlington Heights,* 616 F.2d 1006, 1014 (7th Cir.1980) (emphasis supplied). If the order also affects parties who did not consent to it, the district court must determine that the effect on them "is neither unreasonable nor proscribed." *United States v. City of Miami,* 664 F.2d 435, 441 (5th Cir.1981) (en banc, per curiam) (Rubin, J., *concurring*). Objectors must be given reasonable notice and their objections heard and considered. *Metropolitan Housing Corp.,* 616 F.2d at 1014. We in turn will uphold the settlement "unless there is plain error or an abuse of discretion or if the court acted arbitrarily or failed to satisfy itself that the settlement was equitable and in the public interest." *Id.* at 1015.

## III.

We think the district court erred in approving a consent order that was not agreed to by the Basses. This is not a case in which the primary litigants resolved their dispute via a consent order and in so doing affected to some extent third parties. Instead, this is a case in which one of the primary litigants was able to make an arrangement with an essentially disinterested third party that had the effect of resolving against the other primary litigants' wishes the immediate dispute over pretrial payout of the escrowed funds. In such circumstances as these, our usual deference to settlement agreements simply does not apply.

The FSLIC argues that the consent preliminary injunction was just like an interpleader: all claimants are precluded from the funds while the merits of their claims are adjudicated. Therefore, insofar as this result can be achieved via an interpleader, a

to sue on these claims. 12 C.F.R. §§ 569a.4, 569a.6 (1982).

*fortiori* it is reasonable to effect it via a consent preliminary injunction. This argument, however, fails to appreciate both the procedural safeguards that interpleaders provide to all claimants and this court's reluctance to create, for no apparent reason, a new procedure to supplement interpleaders authorized by rule or statute.

The interpleader actions authorized by Fed.R.Civ.P. 22 and 28 U.S.C. § 1335 contain safeguards of claimants' interests. For example, the stakeholder first must satisfy the court that it is entitled to an interpleader remedy by demonstrating that "there exists a 'real and reasonable fear of exposure to double liability or the vexation of conflicting claims.'" *Union Central Life Insurance Co. v. Hamilton Steel Products, Inc.*, 448 F.2d 501, 504 (7th Cir.1971). This requirement prevents a stakeholder from withholding funds from a claimant by "recognizing" a groundless competing claim. Perhaps more important as a practical matter is the fact that in an interpleader action each of the competing claimants is in the position of plaintiff with respect to its own claim to the funds. As a plaintiff, a claimant can exercise greater control over the pace of the litigation. In contrast, one whose claim is the subject of a consent preliminary injunction between a claimant and a stakeholder remains a defendant and in general must follow the plaintiff-claimant's lead.

We recognize that in a consent preliminary injunction context the district court could use its authority so as to protect claimants from groundless "interpleaders" and dilatory plaintiffs. But this brings us to a more basic problem: our reluctance to recognize a new type of "interpleader" when, as it appears in this case, a Rule 22 or Section 1335 interpleader would have sufficed. The FSLIC suggests no reason why it could not have persuaded the stakeholder to file an interpleader action in lieu of filing the consent preliminary injunction. Indeed, the stakeholder in this case *did* file

a Rule 22 interpleader counterclaim just six days after it and the FSLIC had filed the consent preliminary injunction.[3] In addition, we believe that there is a serious question about the grant of a "consent" preliminary injunction when the Basses—indispensable parties to the action—did not consent. The FSLIC contends that the Basses will eventually have an opportunity to litigate their claim, but this is an inadequate basis for enjoining (pursuant to a one-sided consent) the disbursement of funds to which they have a claim.

Thus, in view of the Basses' failure to consent and the practical advantages and the ready availability of an interpleader action, we conclude that the district court abused its discretion in approving the consent preliminary injunction arranged between one claimant, the FSLIC, and the stakeholder. Therefore, we reverse and remand to the district court for further proceedings consistent with this opinion. If the FSLIC still seeks an injunction, then the hearing can be resumed or begun again in order to determine whether the FSLIC can satisfy the requisite criteria for granting such an injunction. *See Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc.*, 545 F.2d 1096 (7th Cir.1976). If the FSLIC takes the preferred course of moving as a party to the Rule 22 interpleader counterclaim either for deposit of the funds or for a bond to secure payment, then the need for an injunction will presumably be obviated.

REVERSED AND REMANDED.

3. The interpleader filing raises the question whether this appeal is now moot. The appeal appears not to be moot insofar as the funds were not secured pursuant to a bond or deposit in connection with the interpleader. Why the funds were not so secured in the interpleader action, thereby avoiding the need to pursue this appeal, we do not know.