INDIANAPOLIS COLTS,
Plaintiff-Appellee,

v.

MAYOR AND CITY COUNCIL OF BALTIMORE, Defendants-Appellants,

and

Capital Improvement Board of Managers
of Marion County,
Defendant-Appellee.

No. 84–1649.

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 1984.

Decided Aug. 10, 1984.

Samuel K. Skinner, Sidley & Austin, Chicago, Ill., for plaintiff-appellee.

Edwin C. Thomas, III, Bell, Boyd & Lloyd, Chicago, Ill., for defendants-appellants.

John P. Price, Bingham, Summers, Welsh & Spilman, Indianapolis, Ind., for defendant-appellee.

Before BAUER, POSNER and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

Defendants Mayor and City Council of Baltimore (collectively "Baltimore") appeal from two district court orders entered in this interpleader action Plaintiff Indianapolis Colts filed pursuant to 28 U.S.C. § 1335 (1948). The Colts, a football team owning a National Football League franchise, filed the action claiming interpleader jurisdiction on the ground that Baltimore and the Capital Improvement Board of Managers of Marion County, Indiana (CIB), operators of the Indianapolis Hoosier Dome, had conflicting claims against the team. The district court in Indiana granted the Colts' request for an order restraining Baltimore from pursuing its condemnation action against the Colts, which was pending in a federal district court in Maryland. Two weeks later, the district court also enjoined Baltimore from pursuing a Maryland state court action against the NFL in which Baltimore hoped to stop the Colts from moving to Indianapolis. Baltimore filed a notice of appeal from the court's two orders on April 19, 1984. On April 23, Baltimore also filed in this court an emergency motion to stay the district court orders and to enjoin the Colts from preparing to play football in Indianapolis pending this appeal. On May 8, this court granted Baltimore's motion for a stay, but denied Baltimore's request for an injunction against the Colts. *Indianapolis Colts v. Mayor of Baltimore*, 733 F.2d 484 (7th Cir.1984). Our jurisdiction is based on 28 U.S.C. § 1292(a)(1) (1982). We hold that the district court did not have interpleader jurisdiction to hear this suit, and therefore vacate the orders and remand with instructions to dismiss.

I

Through the 1983 season, the Colts played their home games in Baltimore Memorial Stadium. In February 1984, the Colts and the stadium managers began negotiating a renewal of the Memorial Stadium lease. At the same time, the Colts negotiated with the CIB regarding the possibility of moving the team to the Hoosier Dome.

On March 27, 1984, Colts owner Robert Irsay learned that the Maryland Senate passed a bill granting the City of Baltimore the power to acquire the Colts by eminent domain. Irsay decided to move the team to Indianapolis and promptly executed a lease with the CIB. The Colts fled Baltimore under the cloak of darkness; eight moving vans full of Colts equipment arrived in Indianapolis on March 29.

On March 29, Maryland's governor signed into law the bill authorizing Baltimore to acquire the Colts by condemnation. Baltimore filed a condemnation petition against the Colts on March 30 in Maryland state court. The state court restrained the Colts from transferring any element of the team from Baltimore.

After learning about the condemnation suit by telegram, the Colts took two actions. First, on April 2, the Colts caused removal of the state court condemnation proceeding to federal district court in Maryland. Second, on April 5, the Colts filed this action in the United States District Court for the Southern District of Indiana, claiming that their obligations under the lease with the CIB conflicted with Baltimore's attempts to acquire the team through eminent domain.

## II

Our review of this case extends to the question of whether the interpleader was proper. *Allstate Insurance Co. v. McNeill,* 382 F.2d 84 (4th Cir.1967), *cert. denied,* 392 U.S. 931, 88 S.Ct. 2290, 20 L.Ed.2d 1390 (1968). This question is an issue of law entitled to full appellate review.

We hold that the Colts have not successfully satisfied the pleading requirements of 28 U.S.C. § 1335. Despite the Colts' argument that it is unfair for the City of Indianapolis to lose the team by another city's condemnation suit, we find that the CIB and Baltimore do not have conflicting claims over a single stake. Additionally, even assuming the CIB and Baltimore have claims over the same stake, the Colts do not face a reasonable danger of multiple liability or vexatious, conflicting claims from the claimants, and thus interpleader is not justified here.

### A

 A basic jurisdictional requirement of statutory interpleader is that there be adverse claimants to a particular fund.

*See Libby, McNeill & Libby v. City National Bank,* 592 F.2d 504 (9th Cir.1978). The CIB and Baltimore are not claimants to the same stake. Baltimore seeks ownership of the Colts franchise, whereas the CIB has no claim to ownership of the franchise. Instead, the CIB has a lease with the Colts that requires the team to play its games in the Hoosier Dome and imposes other obligations to ensure the success of the enterprise.

 The Colts argue in part that clause 11 of their lease with the CIB raises an interest in the CIB which conflicts with Baltimore's attempt to obtain the franchise. Clause 11 grants the CIB the first chance to find purchasers for the team if Irsay decides to sell his controlling interest. This right of first refusal is the CIB's contractual guarantee either that Irsay always will control the team or that the CIB will have the right to choose his successor. Yet this provision does not give the CIB a present right to buy the Colts, and thus does not raise a claim against the franchise conflicting with Baltimore's claim.[1]

A successful eminent domain action obviously will defeat the CIB's interests in keeping the Colts in Indianapolis. Nevertheless, interpleader is not designed to aid every plaintiff confronted by one claim which, if successful, would defeat a second claim because the plaintiff has lost the ability to pay damages. Such an interpretation would twist interpleader into protection for defendants from losing the opportunity to recover damages because the plaintiff's resources already have been depleted. Interpleader is warranted only to protect the plaintiff-stakeholder from conflicting liability to the stake.

---

1. Other interests might constitute a claim conflicting with the eminent domain action. For example, if the CIB had signed a contract to purchase the Colts, the CIB might have had rights as equitable owner which would conflict with Baltimore's claim. The right of first refusal and the contractual obligations of the Colts, however, do not raise such a conflict.

This case is analogous to the situation where the owner of a commercial building leases the entire building to a company for ten years and then in the middle of that lease suddenly faces a condemnation proceeding by the city. Even assuming the existence of all other jurisdictional prerequisites, the company can assert no conflicting claim to justify interpleader. The company may have a claim against the owner. The company may also have a claim against the city for damages. But the company has no claim to ownership of the building conflicting with the city's claim of eminent domain. The CIB-Colts lease indicates clearly that the CIB has no claim.

Interpleader is proper in cases such as a surety confronted by claims of subcontractors and materialmen which exceed the surety's contractual liability, conflicting claims of entitlement to the proceeds of a life insurance policy, or automobile insurers surrendering the maximum sum of their liability to the court for disposition to plaintiffs in an accident case. The issue of whether the interpleaded defendants' claims are adverse does not arise often. The Colts' argument here that the "bottom line" of this case is which city "gets" the Colts clouds the issue of adversity. Only reasonable legal claims can form the adversity to the plaintiff necessary to justify interpleader. The CIB has no reasonable legal claim to ownership of the franchise sought by Baltimore. For the Colts, losing their franchise to Baltimore may lead to breach of the lease claims by the CIB, but this is not a situation for which interpleader was designed.[2] *See Texas v. Florida,* 306 U.S. 398, 405–08, 59 S.Ct. 563, 567–568, 83 L.Ed. 817 (1939); *Indianapolis Colts,* 733 F.2d at 487.

### B

■■■ Interpleader is a suit in equity. *See Champlin Petroleum Co. v. Ingram,* 560 F.2d 994 (10th Cir.1977), *cert. denied,* 436 U.S. 958, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978); *see also First National Bank v. United States,* 633 F.2d 1168 (5th Cir.1981); *United States v. Major Oil Corp.,* 583 F.2d 1152 (10th Cir.1978). Because the sole basis for equitable relief to the stakeholder is the danger of exposure to double liability or the vexation of conflicting claims, *Texas v. Florida,* 306 U.S. at 406, 59 S.Ct. at 567, the stakeholder must have a real and reasonable fear of double liability or vexatious, conflicting claims to justify interpleader. *Fonseca v. Regan,* 734 F.2d 944 (2d Cir.1984); *Bass v. Federal Savings & Loan Insurance Corp.,* 698 F.2d 328 (7th Cir.1983); *Dunbar v. United States,* 502 F.2d 506 (5th Cir.1974); *General Electric Credit Corp. v. Grubbs,* 447 F.2d 286 (5th

Cir.1971), *rev'd on other grounds,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972); *Fulton v. Kaiser Steel Corp.,* 397 F.2d 580 (5th Cir.1968); *Francis I. duPont & Co. v. O'Keefe,* 365 F.2d 141 (7th Cir.1966); *Bierman v. Marcus,* 246 F.2d 200 (3d Cir.1957), *cert. denied,* 356 U.S. 933, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958); *New York Life Insurance Co. v. Lee,* 232 F.2d 811 (9th Cir. 1956); *John Hancock Mutual Life Insurance Co. v. Beardslee,* 216 F.2d 457 (7th Cir.1954), *cert. denied,* 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed. 751 (1955); *American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164 (D.V.I. 1975). Even assuming that Baltimore and the CIB are fighting over the same stake, the Colts do not have a reasonable fear of double liability or vexatious claims here. The Colts and the CIB foresaw the likelihood of legal obstacles to prevent the Colts from leaving Baltimore, among which was an eminent domain action. The Colts and the CIB thus specifically contracted that the lease obligations will terminate at the Colts' option if the Colts' franchise is acquired by eminent domain. Clause 21.6 of the lease states in part:

21.6 *Club's Option.*

21.6(a) *Actions.* The parties acknowledge and recognize that at the present time there are pending various lawsuits in the state and federal courts dealing with the issues of the provisions of the Constitution and By-Laws of the League, the Constitution of the United States, and various State Constitutions, state and federal antitrust laws, and state and federal laws of eminent domain and other state and federal laws which may be impact on the provisions of this Agreement. In acknowledgement and contemplation of those lawsuits and of the fact: that certain parties may institute lawsuits of a similar or dissimilar nature, including without limitation those described in the preceding sentence and those seeking injunctive relief to prevent the Club from keeping, observing and/or performing any of this Agreement or

---

**2.** In Part II–B, we discuss how the CIB in the lease relinquished any claim over the Colts in

the event of a successful eminent domain action.

keeping, observing or performing any other covenant, agreement or undertaking; or, a strike suit is filed by any person; or, there is any act or action of the League, be it the institution of a suit, disciplinary or other proceedings, or threatening termination or suspension of the Franchise or of a fine as a result of or related to the Club's transfer of its Franchise or the playing of its home games in Indianapolis; or, an eminent domain suit is filed by any governmental authority or any other statutory body capable of instituting said suits, the parties agree that:

\* \* \* \* \* \*

(iii) If Club is ordered by a final order of such court of final appellate jurisdiction to play other than at the Stadium or the Franchise is acquired by eminent domain, this Agreement shall terminate at Club's option, and the parties shall have no further obligations hereunder except as stated in this Paragraph [dealing with a few final financial affairs].

This "escape" clause renders unreasonable the Colts' claim that they will face a second suit over the same stake if Baltimore ultimately succeeds in its eminent domain action.[3] The Colts' characterization of the CIB's claim does not meet a "minimal threshold level of substantiality." 7 C. Wright & A. Miller, Federal Practice and Procedure § 1704, 370–71 (1972); *Frances I. duPont & Co.*, 365 F.2d at 143 (cited in Wright & Miller).

The distinction in this case between the lack of adverse claims and the lack of fear of double liability or vexatious litigation is slight. Other courts, however, have recognized that even if adverse claims exist in theory, still there may be no real fear of multiple lawsuits. In *Bierman*, 246 F.2d 200, for example, the plaintiffs sought interpleader to resolve claims over a specific sum of money. One claimant asserted a valid claim. The other supposed claimant,

however, was a corporation controlled by the plaintiffs. The Third Circuit ruled that the plaintiffs knew that the corporation would make no claim against the money and thus no equitable consideration supported interpleader jurisdiction. *Id.* at 203–04. In another case, the plaintiff stock brokerage sought to interplead the administrator of the estate to which the plaintiff owed the stake and all the legatees named in the decedent's will. *O'Keefe*, 365 F.2d 141. This circuit ruled that the district court correctly determined that only the administrator would claim the stake, and thus interpleader did not lie. *Id.* at 143.

Because the Colts cannot assert a reasonable fear of multiple liability or vexatious, conflicting claims, interpleader jurisdiction was not proper. There is no other basis for federal jurisdiction in the federal district court in Indiana to hear the Colts' action and thus this suit must be dismissed.

### III

Because we find that Baltimore and the CIB do not have adverse claims and that the Colts are not exposed to the risk of vexatious litigation, we need not address the merits of Baltimore's other arguments against the maintenance of interpleader jurisdiction. Specifically, we decline to decide whether the Colts and the CIB contrived a conflicting claim by signing the lease in order to create jurisdiction in a more favorable forum. Even if that was their plan, it did not succeed. The forum-shopping issue thus is not relevant to our disposition of the case.

The district court's orders are vacated and this action is remanded with instructions that it be dismissed. Each party shall bear its own costs of this appeal.

VACATED AND REMANDED WITH INSTRUCTIONS.

COFFEY, Circuit Judge, dissenting.

The issue in this case is whether the Capital Improvement Board ("CIB") and

---

**3.** We are expressing here not an opinion on the likelihood of success of any action by the CIB, but rather the fact that the CIB plainly relinquished any claim to recover against the Colts for a loss due to a successful eminent domain action.

·the City Council of Baltimore ("Baltimore") are adverse claimants to a particular stake held by the Indianapolis Colts. The majority asserts that the CIB and Baltimore "are ·not claimants to the same stake" and thus the Indianapolis Colts fail to satisfy the jurisdictional requirement of 28 U.S.C. § 1335 (1982). In the alternative, the majority declares that even if a common stake does exist, the Colts are not presented with conflicting and vexatious claims to that stake. I dissent from the majority's strained attempt to simplify this case as merely involving an eminent domain proceeding in Baltimore, Maryland, and a lease agreement in Indianapolis, Indiana. Rather, as characterized by the district court judge, this action involves a struggle over a very unique stake—"the rights and privileges of the [Colts] franchise and the property rights incident to the operation thereof"—with all of the attending social and economic benefits to be derived by two major metropolitan cities competing for the rights and privileges of the Colts' National Football League franchise. The district court entered an extensive list of findings of fact to support its characterization of the stake. The majority completely ignores these findings and summarily declares that "the CIB and Baltimore do not have conflicting claims over a single stake." Based upon the district court's extensive findings of fact, I am convinced that the CIB and the City of Baltimore are adverse claimants to the same stake and thus the Colts satisfy the jurisdictional requirement of 28 U.S.C. § 1335.

According to the district court's findings of fact, on March 28, 1984, the Colts signed a Lease Agreement ("Lease") with the CIB, owner of the Hoosier Dome. Pursuant to the terms of that Lease, the Colts are obligated for a twenty-year period to, *inter alia*, play their pre-season and regular season home football games at the Hoosier Dome and reimburse the CIB for expenses incurred in season ticket distributions. On March 30, 1984, the Baltimore. City Council commenced 'an eminent domain proceeding against the Colts in Maryland state court. The court entered a re-

straining order enjoining the Colts from *inter alia:*

"[t]aking any action or inaction for the purpose or the effect of selling, removing, transferring, emcumbering or otherwise affecting the franchise and contract rights related thereto which is being condemned in these proceedings."

That same day, March 30, 1984, the Colts' executives received a telegram from the City of Baltimore notifying them that the City had commenced an eminent domain proceeding in Maryland state court and had obtained a restraining order. The following day, March 31, 1984, the CIB ratified the Lease previously signed on March 28, 1984. The district court found that because of the sketchy information provided in the telegram, "[b]etween March 30, when the telegram was received, and April 2, the earliest date that the written copy of the First Restraining Order might have been received [the Colts] did not take any action which violated the First Restraining Order as summarized in the telegram."

On April 5, 1984, the CIB sent a letter to the Colts demanding that the Colts fulfill their contractual obligations under the Lease. That same day, the Colts filed a statutory interpleader under 28 U.S.C. § 1335 in the United States District Court for the Southern District of Indiana. The Colts alleged that the Baltimore City Council:

"seeks to require [the] Colts to operate the Franchise in Baltimore and to continue in existence the Baltimore Lease, and ... to preclude [the] Colts from operating the Franchise in conformance with the [CIB] Agreement ...."

The Colts further alleged that the CIB:

"has imposed and will continue to impose contractual obligations upon [the] Colts requiring that [the] Colts retain ownership and control of the franchise and play home games in Indianapolis ...."

The district court conducted an evidentiary hearing and, based upon the evidence presented at that hearing, made findings of facts, entered conclusions of law, and de- ·

termined that the Colts "demonstrated sufficient adverse claims, or potential adverse claims, between Baltimore and the CIB to confer interpleader jurisdiction on this Court pursuant to 28 U.S.C. § 1335." The majority disagrees.

The Federal interpleader statute, 28 U.S.C. § 1335, provides that:

"(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more ... if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property ... and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court

\* \* \* \* \* \*

(b) *Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another.*"

(Emphasis added). The Federal interpleader statute is to be liberally construed in order to protect the stakeholder from both the expense and risk of double litigation. *See, State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 533, 87 S.Ct. 1199, 1205, 18 L.Ed.2d 270 (1967); *Union Central Life Ins. Co. v. Hamilton Steel Prod., Inc.,* 448 F.2d 501, 504 (7th Cir.1971). Indeed, in this circuit "so long as there exists a 'real and reasonable fear of exposure to double liability or the vexation of conflicting claims ..., jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded ....' " *Union Central Life Ins. Co. v. Hamilton Steel Prod., Inc.,* 448 F.2d at 504 (quoting *Bierman v. Marcus,* 246 F.2d 200, 202 (3d

Cir.1957), *cert. denied,* 356 U.S. 933, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958). Moreover, the "stake" may consist of intangible property rights. *Cf. United States v. American Film Institute,* 79 F.R.D. 374, 376 (D.C.D.C.1978) ("rights of access and use possessed by the ... defendants to certain film materials.").

The claim asserted by the CIB is not, as the majority contends, a simple contract interest, rather it involves the rights, benefits, and privileges of a National Football League franchise formerly known as the Baltimore Colts. It is this intangible, but very unique, property right that the CIB seeks to control by enforcing the terms of its Lease. A realistic view of the facts at hand reveals that the CIB was organized to improve and expand the greater Indianapolis economic market. As a result, the CIB provided in its Lease with the Colts:

"WHEREAS, the Board believes that the State of Indiana, County of Marion, City of Indianapolis and the Board will derive substantial economic, financial, and public relations, community and other benefits as a result of the Club's relocating the franchise to the Indianapolis area."

The CIB's interest in enforcing the Lease is not simply to turn a profit for the Hoosier Dome but to enhance the prestige and the economic climate of the City of Indianapolis and the County of Marion, Indiana with a coveted National Football League franchise. *See, e.g., Indianapolis Star,* April 20, 1984, at 6, col. 3 ("stadium lease ... is expected to bring the city $2.6 million in new revenues a year"). There are numerous social and economic benefits associated with a professional sports franchise including public entertainment, increased restaurant and hotel revenues, civic pride, favorable media coverage, increased retail expenditures, and national recognition. This point is clearly driven home by Baltimore's all-out efforts to keep the Colts in Baltimore.

The fact that the City of Indianapolis does not own the Colts and the CIB has only entered into a contract with the

present owners of the franchise is of no consequence. As the California Supreme Court acknowledged in *City of Oakland v. Oakland Raiders*, 32 Cal.3d 60, 646 P.2d 835, 183 Cal.Rptr. 673 (1982), there may be no substantial legal difference between "managing and owning the facility in which the game is played, and managing and owning the team which plays in the facility." 32 Cal.3d at 73, 646 P.2d at 842, 183 Cal.Rptr. at 680. *See also, Los Angeles Memorial Coliseum Com'n v. N.F.L.*, 726 F.2d 1381, 1397 (1984). The Lease in this case expressly provides the CIB with a right of first refusal allowing it to find a suitable purchaser for the franchise if the owner of the Colts, Robert Irsay, disposes of a majority of the stock of the Colts' franchise. The full intent of the CIB as embodied in the Lease is to keep the Colts in Indianapolis and thereby enjoy the rights and privileges of a National Football League franchise. The City of Baltimore also clearly desires these very same rights and privileges and thus, contrary to the majority's simplified analysis, there does exist in this case a common, identifiable stake—the rights and privileges of the Colts' franchise—subject to adverse claims.

The majority asserts that even if there is a common, identifiable stake, the claims of the CIB and Baltimore are not adverse and vexatious. The majority supports its position with reference to section 21.6(a)(iii) of the Lease which provides:

"If Club is ordered by a final order of such court of final appellate jurisdiction to play other than at the Stadium or the Franchise is acquired by eminent domain, this Agreement shall terminate at Club's option, and the parties shall have no further obligations hereunder ...."

According to the majority, this "'escape' clause renders unreasonable the Colts' claim that they will face a second lawsuit over the same stake if Baltimore ultimately succeeds in its eminent domain action." The majority erroneously assumes that nothing will prevent the Colts from performing their obligations under the Lease except the successful eminent domain proceeding by Baltimore. The majority com-

pletely overlooks the fact that the Colts may be prevented from performing their obligations under the Lease before a final unappealable order of eminent domain is entered.

The Lease clearly provides that the Colts may terminate the Lease only if a *final order of a court of final appellate jurisdiction* is issued allowing Baltimore to acquire the Colts by eminent domain. The record reveals that in the eminent domain proceeding of April 5, 1984, the Maryland state court issued a restraining order enjoining the Colts from "selling, removing, transferring, encumbering or otherwise affecting the franchise and contractual rights related thereto which is being condemned in these proceedings." It is probable, indeed likely, that during the course of an eminent domain proceeding in the Maryland district court, Baltimore will again seek to enjoin the Colts from playing any games in Indianapolis to prevent the Colts from becoming further entrenched in the Indianapolis market. There is absolutely nothing in the record before this court to suggest that a new injunction similar to the one previously issued by the Maryland state court will not be entered when the Colts' interpleader action is dismissed. Such an injunction would prevent the Colts from preparing for the upcoming season and preclude the franchise from fulfilling its obligation to play all pre-season and home games in the Indianapolis Hoosier Dome. The Colts' hands would be tied under the terms of the contract for they would not be able to terminate the Lease because no final unappealable order of eminent domain would have been entered. Thus, the CIB would be fully justified in suing the Colts for breach of their contractual duties. The Colts would unnecessarily be presented with simultaneous, adverse, and vexatious claims from both the CIB and the Baltimore City Council.

The City of Baltimore has fought, and will continue to fight, as is its right, the CIB's interest in the Colts. Thus, the above scenario is certainly sufficient to satisfy the language of 28 U.S.C. § 1335 that

two adverse claimants "may claim to be entitled" to the same stake. *See, e.g., State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. at 534, 87 S.Ct. at 1205; *United States v. Major Oil Corp.,* 583 F.2d 1152, 1157 (10th Cir.1978). In light of the liberal construction to be accorded the Federal interpleader statute to protect the stakeholder from the expense and risk of double litigation, I am convinced that the Colts satisfy the jurisdictional requirement of 28 U.S.C. § 1335.