**INDUSTRIAL BANK OF WASHINGTON,
Plaintiff,**

v.

**TECHMATICS TECHNOLOGIES, INC., Tempest Products, Inc., Vycor Corporation, Officepro, Inc., Institute of Modern Procedures, Maryland Small Business Development Financing Authority, William F. Forst, Commissioner of the Commonwealth of Virginia, Department of Taxation, and the United States Internal Revenue Service, Defendants.**

**Civ. A. No. 89–709 SSH.**

United States District Court, District of Columbia.

April 18, 1991.

---

Bobby R. Burchfield, Jean A. Y. duPont, Washington, D.C., for plaintiff.

Robert K. Coulter, Edward J. Snyder, U.S. Dept. of Justice, Washington, D.C. for I.R.S.

Patricia Dwyer Douglass, Washington, D.C., for Vycor Corp.

James Scott Philips, Washington, D.C., for Officepro, Inc.

James Thomas Bacon, Hall, Markle, Sickesl & Dudala, Fairfax, Va., for Institute of Modern Procedures.

James G. Davis, Baltimore, Md., for Maryland Small Business Develop. Financing Authority.

Ellen M. Dowling, Richmond, Va., for William H. Forst.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on the cross-motions for summary judgment of plaintiff Industrial Bank of Washington (IBW), defendant Officepro, Inc. (Officepro), and defendant United States Internal Revenue Service (IRS). Upon consideration of the entire record, the Court grants the motions for summary judgment of IBW and the IRS and denies Officepro's motion for summary judgment.

## BACKGROUND

This is an interpleader action to determine the rights of various claimants to funds that plaintiff IBW holds in checking and escrow accounts for defendant Techmatics Technologies, Inc. (Techmatics). Techmatics was in the business of providing data processing, design engineering, software, training, and management services to federal agencies.[1] Beginning in 1982, IBW provided banking and financial services to Techmatics. In 1989, Techmatics fell into default on several loans from IBW. IBW filed this action to recover on the defaulted loans and to resolve its obligations to Techmatics' creditors. The complaint interpleads four subcontractors that performed Techmatics' government contracts and entered into escrow agreements with IBW. The complaint also interpleads the IRS, which filed a tax lien against Techmatics, the Maryland Small Business Development Financing Authority (MSBDFA), which guaranteed one of Techmatics' loans, and the Virginia Department of Taxation.

IBW's claim stems from three loans that it extended to Techmatics. First, on November 5, 1985, IBW loaned Techmatics $500,000.00 to be repaid within 84 months. The MSDBFA guaranteed the loan up to 80 percent of its face amount plus interest. In conjunction with the loan, Techmatics executed a security agreement on November 7, 1985. The security agreement granted IBW a security interest in all of Techmatics' personal property including "contract rights, accounts ... and all proceeds thereof." IBW filed the security agreement in the financing records of the Maryland State Department of Assessments and Taxation on December 11, 1985. Techmatics repaid a portion of IBW's first loan, but in 1989 fell into default on a principal balance of $307,700.00.

IBW extended two additional loans to Techmatics in April 1987. The first such loan was a working capital loan in the amount of $150,000.00 which Techmatics renewed for one year in December 1987. The second April 1987 loan was a one-year, $250,000.00 line of credit which the parties extended three times in 1988. For each of the April 1987 loans, Techmatics executed a promissory note and, as collateral, assigned its right to payment under nine government contracts.[2] To ensure the continued

---

1. The Court cannot determine the status of Techmatics' business beyond recognizing its obviously serious financial troubles, because Techmatics did not respond to the interpleader complaint. The clerk of the court entered default against Techmatics on November 14, 1990. IBW has moved for the entry of default judgment against Techmatics in the amount of $437,134.64. The Court grants summary judgment in that amount in IBW's favor, therefore, the Court denies the motion for default judgment as moot.

2. The collateral provision of the promissory notes listed Techmatics' right to payment under the following contracts: DAEA08–86–D–0042, 14–12–0001–30160, N00600–86–C–2993, 53–3A94–5–01, 282–87–0010, DABT57–87–C–0011, DTCG40–86–D–3003, 263–MD–71136, and 300–86–0011. Techmatics executed separate forms notifying the respective agencies of its assignments. The agencies returned acknowledgments of the assignments to IBW.

priority of its security interest in Techmatics' property, IBW filed a financing statement covering its security interest in all of Techmatics' business assets, including contracts and contract rights. IBW filed the financing statement with the Maryland State Department of Assessments and Taxation on September 17, 1987, and with the Clerk of the Circuit Court of Montgomery County in Rockville, Maryland, on October 16, 1987. Techmatics paid a portion of each of the April 1987 loans but defaulted on a balance of $112,190.83 of the working capital loan and $17,243.81 of the line of credit. In total, Techmatics is in default on $437,134.64 of its loans from IBW.

Four of the interpleaded defendants, Vycor Corporation (Vycor), Tempest Products, Inc. (Tempest), Institute of Modern Procedures (IMP), and Officepro, were subcontractors on Techmatics' contracts with federal agencies.[3] Techmatics assigned its right to payment under the contracts involving those subcontractors to IBW as security for the April 1987 loans.[4] Vycor, Tempest, and Officepro each entered escrow agreements with Techmatics and IBW.[5] The escrow agreements designated IBW as escrow agent for the subcontractors and provided that the subcontractors would send invoices to IBW for payment. Thus, the federal agencies would pay IBW under the assignments, and IBW would reimburse Techmatics' subcontractors when Techmatics confirmed the invoices. IBW would disburse the remaining funds to Techmatics.

The IRS began making assessments against Techmatics and filing tax liens for unpaid income tax withholding and Federal Insurance Contributions Act (FICA) taxes in September 1987. Each time it made an assessment against Techmatics, the IRS filed a Notice of Tax Lien with the Clerk of the Circuit Court of Montgomery County. The first notice was filed on March 11, 1988, in the amount of $187,453.15.[6] The IRS served a Notice of Levy on IBW for all Techmatics' property and rights to property in IBW's possession on October 17, 1988. Techmatics fell into default on its loans from IBW around the same time. The Notice of Levy indicated that the IRS claimed a tax arrearage totalling $730,313.74.

When IBW received the IRS's notice, the escrow account that the parties created for Tempest had a balance of $5,555.60. The other escrow accounts had not yet received any deposits. IBW froze Tempest's escrow account and Techmatics' three checking accounts, whose balances totaled $27,599.99. IBW then created a "Special Escrow Account" into which it deposited subsequent payments that it received from federal agencies pursuant to the assignments of

3. Vycor was Techmatics' subcontractor on contract number N00600–86–C–2293 with the Naval Military Personnel Command. Techmatics entered into that contract in July 1986. Tempest was the subcontractor on contract number DAEA08–86–D–0042 which Techmatics entered into with the Department of the Army in September 1986. Officepro was the subcontractor on the Public Health Service's (PHS) contract with Techmatics, contract number 282–87–0010, which Techmatics entered into in November 1986. IMP was the subcontractor on two of Techmatics' contracts with the Department of Education: a January 1986 contract, number 300–86–0011, and a January 1988 contract, number PM8805001.

4. With the exception of the Department of Education contract 300–86–0011 for which IMP was a subcontractor, Techmatics assigned its rights to payment to IBW in 1988. Techmatics assigned its right to payment under contract number 300–86–0011 to IBW in 1986.

5. IMP never entered an escrow agreement with IBW for its two subcontracts with Techmatics, although Techmatics did assign IBW its rights to payment under the primary government contracts.

6. In its cross-motion for summary judgment, the IRS provided the following table of the dates and amounts of its liens against Techmatics:

| Tax Period | Assessment Date | Date Lien Filed | Total Due |
| --- | --- | --- | --- |
| 09–30–87 | 12–14–87 | 03–11–88 | $187,453.15 |
| 12–31–87 | 06–13–88 | 08–05–88 | 208,102.88 |
| 03–31–88 | 05–10–88 | 08–24–88 | 176,673.90 |
| 06–30–88 | 09–12–88 | 08–21–88 | 87,908.10 |
| 09–31–88 | 12–26–88 | Unknown | 14,133.89 |

Techmatics' contracts. IBW received a total of $457,846.82 in assigned payments from federal agencies.[7] Combining the Special Escrow Account with Techmatics' checking account balances, IBW created a fund totaling $491,002.41 (interpleader fund or fund). IBW then filed this action to determine the parties' rights to the monies in the interpleader fund.

IBW claims $437,134.64 of the fund plus accrued interest, fees and costs. In its motion for summary judgment, IBW argues that it has a perfected security interest in Techmatics' account balances and contract rights. IBW argues that its security interest takes priority over the claims of the IRS and the subcontractors. The IRS initially claimed all Techmatics' property in IBW's possession.[8] In response to IBW's motion for summary judgment, however, the IRS conceded the priority of IBW's security interest. The IRS claims the balance of the interpleader fund above IBW's claim. In its motion for summary judgment, the IRS contends that its tax lien has priority over the claims of Techmatics' subcontractors. Three of the subcontractors, Officepro, Vycor, and IMP, asserted claims to the balances of their separate escrow accounts in their answers to the interpleader complaint.[9] Only Officepro, however, opposed the motions for summary judgment filed by IBW and the IRS. In addition, Officepro filed a motion for summary judgment, arguing that interpleader is not appropriate in this action. Officepro further contends that it is entitled to $113,260.00, the balance of its escrow account. Officepro argues that IBW subordinated its security interest by entering the escrow arrangement with Techmatics and Officepro. Arguing that IBW wrongfully withheld payment, Officepro asserts a claim for breach of contract and breach of fiduciary duty.[10] Finally, Officepro maintains that its claim takes priority over the IRS's tax lien.

## DISCUSSION

### 1. The Interpleader Action

IBW invokes both procedural interpleader, Rule 22 Fed.R.Civ.P., and statutory interpleader, 28 U.S.C. § 1335 (1976). Procedural interpleader requires complete diversity as an independent basis for federal jurisdiction. C. Wright, Handbook of the Law of Federal Courts § 74 at 363 (3d ed.1976). On the other hand, the interpleader statute requires only "minimal diversity," meaning that two claimants must be residents of different states. *State Farm Fire & Casualty Co. v. Tashire*, 386 U.S. 523, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967). Because one claimant, the IRS, is not a resident of any state, complete diversity does not exist in this case and procedural interpleader is not available. The claimants do satisfy the less restrictive minimal diversity standard, therefore, the interpleader statute may serve as a basis for this action.[11]

The interpleader statute applies when there are "two or more adverse claimants of diverse citizenship" to property in plaintiff's possession. 28 U.S.C. § 1335. In its

---

7. The total of the payments included $43,070.20 from the Department of the Navy, $113,260.00 from the Department of Health and Human Services for the PHS contract on which Officepro was the subcontractor, and $301,516.62 from the Department of Education.

8. The Virginia Department of Taxation also served a notice of tax assessment against Techmatics on IBW. The November 29, 1988, notice claimed state taxes in the amount of $66,723.85. The Virginia Department of Taxation claimed that amount in its answer to the interpleader but did not respond to the motions now before the Court.

9. IMP claimed $149,827.88, and Vycor claimed $30,474.13. Tempest filed a motion for a more definite statement, seeking information on the $5,555.60 in its escrow account. Because of the disposition of the motions for summary judgment, Tempest's motion for a more definite statement is denied as moot.

10. The other subcontractors asserted similar claims in their answers to the interpleader complaint.

11. At a minimum, two claimants are diverse. Tempest is a corporation organized under the laws of the Commonwealth of Virginia and has its principal place of business there. Officepro is a corporation formed under the laws of the State of Maryland, where it has its principal place of business.

motion for summary judgment, Officepro contends that the requisite adversity does not exist among the claims in this case because each subcontractor's claim arose from a separate escrow agreement. Renouncing any claim to the other subcontractors' escrow accounts, Officepro argues that the various subcontractors' claims cannot be adverse to each other because each refers to a distinct escrow account. Officepro further maintains that IBW manufactured the appearance of adverse claims by wrongfully combining the escrow accounts into the interpleader fund.

■ To satisfy the adversity requirement for an interpleader action, the interpleader claims must be adverse to the fund and adverse to each other. *See Gaines v. Sunray Oil Co.*, 539 F.2d 1136 (8th Cir. 1976); *Indianapolis Colts v. Baltimore*, 741 F.2d 954 (7th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). Officepro argues that the subcontractors' claims in this action fail the adversity requirement because each arises from a separate escrow agreement.[12] The subcontractors' claims are adverse to the interpleader fund because each subcontractor seeks satisfaction of its claim out of the fund. Although each subcontractor does not claim the entire fund, each does claim a portion of the actual money in the inter-

pleader fund. The IRS's claim is also directly adverse to the interpleader fund. The IRS seeks to attach the money in IBW's possession to satisfy part of its tax lien. The amount of its recovery, if any, is related to, and limited by, the amount of the fund. The separate origins of the subcontractors' claims are irrelevant. The interpleader statute expressly permits an interpleader action "although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of each other." 28 U.S.C. § 1335(b).

The claims in this action are also adverse to each other.[13] Officepro contends that the subcontractors' claims are not adverse because each subcontractor claims only its own escrow account. That argument ignores the IRS's claim, which is adverse to all of the subcontractors' claims. The IRS claims to have a tax lien that takes priority over the subcontractors' claims, in an amount in excess of the entire interpleader fund. Although the IRS has conceded the priority of IBW's security interest, its claim remains adverse to the subcontractors' claims. The IRS contends that it is entitled to the remainder of the interpleader fund before any of the subcontractors are entitled to payment. Thus, excluding

---

**12.** In support of its argument, Officepro relies in part on *Gaines v. Sunray Oil Co.*, 539 F.2d 1136 (8th Cir.1976). The interpleader fund in *Gaines* consisted of a brokerage commission that resulted from the sale of a company. *Id.* at 1137. Several parties asserted monetary claims relating to the transaction against the interpleader plaintiff. The claimants, however, disclaimed any interest in the brokerage commission and moved for dismissal from the interpleader action to pursue their claims independently. Starting with the principal that "the subject matter of an interpleader action is defined by the fund deposited by the stakeholder," *id.* at 1141, the *Gaines* court stressed two factors concerning the claims. First, the claimants did not seek to have their claims paid out of the interpleader fund. Second, the amount of the claimants' recovery legally was not related to, or limited by, the amount of the fund. The *Gaines* court concluded that the claims were not adverse to the interpleader fund and granted the claimants' motion to dismiss. *Id.*

**13.** The Court in *Indianapolis Colts v. Baltimore*, 741 F.2d 954 (7th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985),

dismissed an interpleader action because the claims were not adverse to each other. *Indianapolis Colts* arose out of the secret nighttime departure of the Colts, a National Football League franchise, from Baltimore to Indianapolis. *Id.* at 956. The team executed an agreement to lease the Hoosier Dome from the Capital Improvement Board of Managers of Marion County, Indiana (CIB). The lease provided the CIB a right of first refusal in the event of a sale of the team. After the Colts' flight, Baltimore initiated condemnation proceedings against the team. The Colts responded by filing an interpleader action naming Baltimore and the CIB as defendants and claiming that the team was exposed to potentially adverse claims from the two. The *Indianapolis Colts* court held that the right of first refusal did not give the CIB a claim to ownership of the franchise. *Id.* at 956. The court, therefore, concluded that the CIB's potential claim under the right of first refusal would not be adverse to the condemnation proceeding. The *Indianapolis Colts* court, therefore, dismissed the action. *Id.*

its own claim, IBW faces two claimants to each escrow account, the IRS and the relevant subcontractor. Furthermore, the total of the subcontractors' claims and the IRS's claim exceeds the amount of the interpleader fund.

■ Officepro's final argument is that interpleader is not proper in this case because IBW asserts a claim to the fund. Officepro cites *Bechtel Power Corp. v. Baltimore Contractors, Inc.*, 579 F.Supp. 648 (E.D.Pa.1984). In *Bechtel,* the court stated, "what is troublesome to the court in the case *sub judice* is Bechtel's true posture that it denies that it owes the fund *to anyone.* It is making a claim to the entire fund." *Id.* at 652. Bechtel entered into a subcontract arrangement with Baltimore Contractors, which entered second-tier subcontracts for work on the project. Before completion of the project, Baltimore informed Bechtel that it had closed its business and that it owed $433,900.00 to certain of the second-tier subcontractors. The second-tier subcontractors sought payment from Bechtel as the project manager. The *Bechtel* court noted that the subcontractors' claims were direct against Bechtel and independent of the fund. The fund, therefore, had no real bearing on Bechtel's potential liability to the subcontractors. The court commented that "were Bechtel simply seeking to have the court determine the respective amounts Bechtel must pay to creditors of Baltimore, which claims would be competing for the [fund], then the total litigation would more properly belong in a single forum and proceeding." *Id.* at 652. This describes IBW's position. IBW seeks to resolve the competing claims of Techmatics' creditors to Techmatics' property in its possession. Because IBW is itself a creditor of Techmatics, it seeks to satisfy its claim out of the interpleader fund. The *Bechtel* court acknowledged that claiming an interest in the fund is not an absolute bar to an interpleader action.

*Id.* at 651. In this case, using interpleader avoids multiple actions concerning each escrow account and prevents inconsistent resolution of the parties' rights.

## 2. The Parties' Claims

■ In its cross-motion for summary judgment, IBW claims $437,134.64, plus accrued interest, fees, and costs from the interpleader fund. IBW contends that its claim takes priority over all competing claims because it has a perfected security interest in Techmatics' assets. The Uniform Commercial Code (UCC) as adopted in Maryland governs IBW's security interest. Under Maryland's UCC, "a security interest is perfected when it has attached and when all of the steps for perfection have been taken." Md. Commercial Law Code Ann. § 9–303 (1975). There are three steps for a security interest to attach. The parties must execute a written security agreement, the creditor must give value in return for the security interest, and the debtor must have "rights in the collateral." *Id.* § 9–203 (Supp.1990). To perfect a security interest, a creditor must file a financing statement in the Maryland State Department of Assessments and Taxation. *Id.* §§ 9–302, 9–401(1)(c).[14]

IBW and Techmatics executed a security agreement on November 7, 1985. In the agreement, Techmatics granted IBW a security interest in all of Techmatics' personal property, including contract rights, accounts, and after-acquired property. In conjunction with the 1987 working capital loan and the line of credit, Techmatics signed two additional promissory notes specifically assigning its rights to payment under nine government contracts as collateral for the loan. IBW's loans to Techmatics constituted value given, therefore, IBW's security interest attached to Techmatics' rights to payment under its government contracts as soon as Techmatics ob-

---

**14.** If the debtor has a place of business in only one county in Maryland, then the creditor must also file in the office of the clerk of the circuit court of that county. Md. Commercial Code § 9–401(1)(c). IBW filed with the clerk of the Montgomery County Circuit Court on October

16, 1987. It is not clear whether Techmatics had a place of business in Maryland outside Montgomery County. IBW satisfied the additional filing requirement, whether or not it was necessary.

tained such rights.[15] *See id.* §§ 9–303(1), 9–306. IBW perfected its security interest when it filed financing statements covering all of Techmatics' assets in 1985 and 1987 with the Maryland State Department of Assessments and Taxation. Under the UCC filing system as adopted in Maryland, IBW's perfected security interest has priority over any prior unsecured claims and any subsequent security interests or liens against Techmatics. *See id.* §§ 9–201, 9–301. Neither the IRS nor Officepro has alleged that it has a prior security interest. In addition, the remaining claimants conceded the motions for summary judgment by their failure to file a response. *See* Local Rule 108(1)(b). Accordingly, the Court concludes that IBW is entitled to summary judgment in the amount of $437,-134.64.

■ The IRS conceded the priority of IBW's perfected security interest in its reply memorandum in support of its motion for partial summary judgment. The IRS claims the remainder of the interpleader fund, arguing that its tax lien has priority over Officepro's claim and the claims of Techmatics' other subcontractors. The IRS's tax lien is governed by 26 U.S.C. § 6321 (1986). Section 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal belonging to such person.

*Id.* The general tax lien that arises under § 6321 gains priority over subsequent security interests once the IRS files a notice of tax lien. *Id.* § 6323(f). Even before a notice of tax lien is filed, a general tax lien has priority over all other claims except the claims of secured creditors, judgment lien creditors, purchasers, and mechanic's lienors. *Id.*[16] The IRS notes that its first general tax lien against Techmatics arose as of December 14, 1987. Even if the claims of Techmatics' subcontractors had arisen prior to that date, the IRS's tax lien would retain priority over the unsecured claims. *See id.* Furthermore, the IRS filed a Notice of Tax Lien in the amount of $171,764.75 covering the 1987 tax assessment on March 11, 1988. As of that date, the IRS's claim obtained priority over any subsequent liens against Techmatics. *See id.* § 6323(a), (b). The Court concludes that the IRS is entitled to summary judgment in the amount of the fund remaining after IBW satisfies its judgment.

Officepro does not allege that it satisfies any of the four categories of creditors that take priority over a general tax lien. However, Officepro offers several arguments in favor of the priority of its claim to $113,-260.00 of the interpleader fund. First, Officepro contends that it has priority over the IRS's tax lien because Techmatics assigned its right to payment under PHS contract number 282–87–0010 to IBW as escrow agent for Officepro in April 1988.[17] Officepro contends that the Assignment of Claims Act, 31 U.S.C. § 3727, bars the IRS's claim to the assigned funds. The Assignment of Claims Act is irrelevant, because the IRS filed its notice of tax lien in March 1988 before Techmatics assigned its right to payment to IBW in April of that year. The assignment, therefore, was

---

**15.** IBW's security interest also attached to Techmatics' checking account balances.

**16.** The validity and priority of a tax lien pursuant to § 6321 is determined by 26 U.S.C. § 6323. Section 6323 provides:

> **(a) Purchasers, holders of security interests, mechanic's lienors, and judgment lien creditors.**—The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof

which meets the requirements of subsection (f) has been filed by the Secretary.

*Id.*

**17.** Officepro states that Techmatics assigned its rights under contract number 383–87–0010 to IBW as escrow agent for Officepro. Techmatics' April 1987 promissory notes make clear, however, that the contract was assigned to serve as collateral for IBW's loans to Techmatics. IBW and Techmatics established the escrow arrangement to facilitate paying Officepro because of the assignment.

made subject to the IRS's tax lien. In fact, the IRS's tax lien is subordinate to IBW's security interest only because IBW perfected its security interest by filing in 1985 and in September 1987 before the IRS's tax lien arose in December 1987. *See* 26 U.S.C. § 6323. With regard to Officepro, the tax lien attached to the contract rights before the assignment. Therefore, Officepro's claim based on the assignment alone is subject to the prior lien.

Officepro next argues that the money in its escrow account does not constitute the "proceeds" of a Techmatics contract because Officepro, not Techmatics, performed the contract. This argument invokes the distinction between a "contract right" and an "account" that existed before Maryland adopted revised U.C.C. § 9–106 in 1980.[18] The revised § 9–106, which applies to this case, provides that " 'account' means any right to payment for goods sold or for services rendered ... whether or not it has been earned by performance." *Id.* Under the new provision, the definition of account includes the former definition of contract right. The revision makes clear that performance under a contract is not a disposition of the collateral. For this reason, no "proceeds" issue arises from the fact that Officepro rather than Techmatics performed the contract.

■ Officepro argues that IBW subordinated its security interest through the escrow agreement with Techmatics and Officepro. Section 9–316 of Maryland's UCC permits "subordination by agreement by any person entitled to priority." Md. Commercial Code Ann. § 9–316. An examination of the escrow agreement, however, reveals that IBW did not intend to subordinate its security interest through the agreement. The agreement set forth its purpose as "facilitating and regularizing the receipt of monies from the Federal Government under the Contract, and the distribution of those monies to [Techmatics] and Officepro." The agreement also disclaimed any effect beyond the scope of the escrow arrangement.[19] For this reason, the Court concludes that the escrow agreement did not affect the priority of IBW's security interest.

■ Finally, Officepro argues that IBW wrongfully commingled the escrow accounts when it created the interpleader fund. As a result, Officepro argues, this Court should deny IBW the equitable remedy of interpleader under the doctrine of "unclean hands." Pursuant to its security interest, IBW was entitled to retain possession of the balances of Techmatics' checking and escrow accounts. *See* Md. Commercial Code § 9–503. IBW, therefore, did not breach its duty as escrow agent by creating the interpleader fund. For this reason, Officepro's claims for breach of contract and breach of fiduciary duty are unpersuasive. Officepro's claim is subordinate to the claims of IBW and the IRS. The two prior claims exhaust the interpleader fund, and therefore Officepro's motion for summary judgment is denied. As noted, the Court treats the failure of the remaining interpleader defendants to oppose the motions for summary judgment as a concession on the merits of those motions. *See* Local Rule 108(1)(b).

## CONCLUSION

IBW is entitled to summary judgment in the amount of $437,134.64 plus accrued in-

---

18. Officepro cites *American East India Corp. v. Ideal Shoe Co.,* 400 F.Supp. 141 (E.D.Pa.1978), *aff'd,* 568 F.2d 768 (3d Cir.1976), which was decided under the original article 9 definition of contract right. The *American East India* court held that the account created by a third party's performance of the contract did not constitute "proceeds" of the contractual right to payment. Thus, a creditor with a security interest in the "contract right" could not reach the payment in the hands of the third party. Section 9–106 was amended to avoid precisely that result. Henson, Secured Transactions Under the Uniform Commercial Code, 416 app. (1979).

19. "ESCROW AGENT shall not incur any liability or responsibility nor be bound in any way by any agreement or contract between [Techmatics] and G.T.S.I. nor between either [Techmatics] or Officepro and a third party (whether or not it has knowledge thereof), and its only duties or responsibilities shall be to hold the escrow deposit as ESCROW AGENT and to dispose of it in accordance with the terms of this Escrow Agreement, and no implied covenants of the ESCROW AGENT's shall be read into these instructions."

terest, fees, and costs, pursuant to its perfected security interest in all of Techmatics' property. The IRS's tax lien is subordinate to IBW's security interest but it takes priority over Officepro's claim and the claims of the other subcontractors. Therefore, the Court grants summary judgment in favor of the IRS for the balance of the interpleader fund above IBW's claim. IBW shall file an accounting of its recovery consistent with this Opinion and shall disburse the remainder of the interpleader fund to the IRS. Pursuant to Fed.R.Civ.P. 54(b), the Court finds that "there is no just reason for delay" in entering judgment on the claims of the remaining interpleader defendants. Accordingly, final judgment shall be entered in this case.